UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARA REICHEL and PETER MILLS, | Index No. 1:25-cv-06626 |
| Plaintiffs, | |
| v. | ORAL ARGUMENT REQUESTED |
| ELIZABETH COBBS, | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF HER RULE 12 MOTION TO DISMISS

FIRESTONE GREENBERGER PLLC
*Attorneys for Defendant*
Jordan Greenberger
Callie J. Kramsky
104 W. 40th St., 4th Fl.
New York, NY 10018
(212) 597-2255
jg@firegreenlaw.com
ck@firegreenlaw.com

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................................ 1

II.  BACKGROUND ................................................................................................................ 2

III. JURISDICTIONAL FACTS.................................................................................................. 7

IV.  ARGUMENT.................................................................................................................... 9

   A.  THE COURT LACKS PERSONAL JURISDICTION OVER DR. COBBS............................................ 9

      1.  *There Is No General Jurisdiction Over Dr. Cobbs* ............................................................ 10

      2.  *There Is No Specific Jurisdiction Over Dr. Cobbs*.............................................................11

   B.  THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' COMPLAINT ............................................ 17

V.  CONCLUSION.................................................................................................................. 23

## TABLE OF AUTHORITIES

CASES

*Aday v. Sony Music Ent., Inc.*, No. 96 CIV. 0991 (MGC), 1997 WL 598410 (S.D.N.Y. Sept. 25, 1997)-------------------------------------------------------------------------------------------------- 22, 23, 27

*Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 145 F.4th 257 (2d Cir. 2025) -------------------24, 26

*Barksdale v. Robinson*, 211 F.R.D. 240 (S.D.N.Y. 2002)-------------------------------------------23, 27

*Beacon* and *Ehrenfeld v. Bin Mahfouz*, 489 F.3d 542 (2d Cir. 2007) -------------------------------- 16

*Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757 (1983)------------------------------- 1, 15, 16, 18

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ----------------------------------- 14, 21

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342 (S.D.N.Y. 2014)------- 10

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97 (S.D.N.Y. 2015) ---------- 12

*Community for Creative Non–Violence*, 490 U.S., 109 S.Ct. -------------------------------------- 28

*Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585 (S.D.N.Y.), aff'd, 351 F. App'x 516 (2d Cir. 2009)-------------------------------------------------------------------------------------------------------3

*Davis v. E. I. DuPont deNemours & Co.*, 240 F.Supp. 612 (S.D.N.Y.1965)---------------------- 26

*de Becdelievre v. Anastasia Musical LLC*, No. 16 CIV. 9471 (AKH), 2018 WL 1633769 (S.D.N.Y. Apr. 2, 2018) -------------------------------------------------------------------------------------4

*Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456 (S.D.N.Y. 2022), *aff'd*, 66 F.4th 69 (2d Cir. 2023) ------------------------------------------------------------------------------ 14, 15

*Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273 (S.D.N.Y. 2012)----------------------------------4

*Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020)---------------------------------------------------------- 24

*Fischbarg v. Doucet*, 9 N.Y.3d 375, 849 N.Y.S.2d 501 (N.Y. 2007) -------------------------------- 15

*Fort Knox Music, Inc. v. Baptiste*, 139 F.Supp.2d 505 (S.D.N.Y. 2001) ----------------------- passim

*Gilliam v. Am. Broad. Companies, Inc.*, 538 F.2d 14 (2d Cir. 1976)-------------------------------- 26

*Golden v. Zwickler*, 394 U.S. 103, 89 S. Ct. 956 (1969)---------------------------------------------- 25

*Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir. 1980)----------------------------3, 4

*Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, 2006 WL 1147963 (S.D.N.Y. May 1, 2006)2, 11, 18, 19

*Horror Inc. v. Miller*, 15 F.4th 232 (2d Cir. 2021)--------------------------------------------------- 24

*Kiss Nail Products, Inc. v. One Two Cosmetics, LLC*; 2020 WL 2924614 (S.D.N.Y. March 5, 2020)-------------------------------------------------------------------------------------------------2, 19, 20

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195 (N.Y. 1988) ----------------- 15

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039 (2d Cir.1990) - 12

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2013)-------------------------------------1, 11, 16, 17

*McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34 (N.Y. 1967)--------- 14

*Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996) -----------------------------------------------------21, 28

*Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) --------------------- 24

*Netzer v. Continuity Graphic Assocs.*, Inc., 963 F. Supp. 1308 (S.D.N.Y. 1997)------------------- 28

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir.1997)--------------------------------------11

*Seaweed, Inc. v DMA Prod. & Design & Mktg. LLC.*, 219 F. Supp. 2d 551 (S.D.N.Y. 2002) ----11

*Shakour v. Fed. Republic of Germany*, 199 F. Supp. 2d 8 (E.D.N.Y. 2002) ----------------------- 12

*Sidik v. Royal Sovereign Int'l, Inc.*, No. 17-CV-7020 (JS)(ARL), 2020 WL 5441306 (E.D.N.Y. Sept. 10, 2020) ------------------------------------------------------------------------------ 13

*Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221 (2d Cir. 2014)----------------------11

*Stewart v. Abend*, 495 U.S. 207, 110 S.Ct. 1750 (1990)------------------------------------------- 26

*Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998)-----------------------------------------------------4

*V&A Collection, LLC v. Guzzini Properties Ltd.*, 46 F.4th 127 (2d Cir. 2022) --------------------- 10

*Vasquez v. Torres-Negron*, No. 06 CIV 619 CM, 2007 WL 2244784 (S.D.N.Y. July 11, 2007) - 25

*Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 S. Ct. 1135 (2024) -------------------------- 23

## STATUTES

17 U.S.C. § 101 --------------------------------------------------------------------------------------- 17, 21

17 U.S.C. § 102(b)-----------------------------------------------------------------------------------------3

17 U.S.C. § 103(b)--------------------------------------------------------------------------------------- 21

17 U.S.C. § 304 ---------------------------------------------------------------------------------------- 13

17 U.S.C. § 304(c)-------------------------------------------------------------------------------------- 14

17 U.S.C. § 507(b)--------------------------------------------------------------------------------2, 18, 19

## RULES

CPLR § 301----------------------------------------------------------------------------------------- 10, 11

CPLR § 302------------------------------------------------------------------------------------- 11, 12, 13, 15

Fed. R. Civ. P. 12(b)(2)------------------------------------------------------------------------- 1, 9, 23

Fed. R. Civ. P. 12(b)(6)---------------------------------------------------------------------------- 1, 23

## TREATISES

3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 12.05[C][1] (Lexis 2020)- 20

5 McCarthy on Trademarks and Unfair Competition § 32:38 (5th ed.) ---------------------------- 14

Siegel, N.Y. Prac. § 81 (6th ed.) -------------------------------------------------------------------11

Defendant Elizabeth Cobbs ("Dr. Cobbs" or "Defendant"), by her undersigned counsel, respectfully submits this memorandum of law in support of her motion: (i) pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss for lack of personal jurisdiction; and (ii) pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim based upon copyright law's three year statute of limitations. Dr. Cobbs' motion should be granted because the Court lacks personal jurisdiction over her, and because Plaintiffs' claims accrued in 2019 and are therefore time-barred.

## I.    **PRELIMINARY STATEMENT**

If not time-barred, then whether the plaintiffs' musical copies protectible elements of Dr. Cobbs' book should be decided in California where Dr. Cobbs lives.  As explained further in her accompanying declaration, Dr. Cobbs is not subject to either general or specific jurisdiction in New York.  Dr. Cobbs has had extremely limited contacts with New York, and the declaratory relief Plaintiffs seek would exist wholly independent of any of those limited contacts.  Therefore, the complaint should be dismissed for lack of personal jurisdiction.

The Court's lack of personal jurisdiction over Dr. Cobbs is confirmed by the Second Circuit's decision in *Beacon Enterprises, Inc. v. Menzies*, and the line of intellectual property cases following that decision.  *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757 (1983); *see also*, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128-31 (2013); *Fort Knox Music, Inc. v. Baptiste*, 139 F.Supp.2d 505 (S.D.N.Y. 2001); *Kiss Nail Products, Inc. v. One Two Cosmetics, LLC*; 2020 WL 2924614 (S.D.N.Y. March 5, 2020); *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, 2006 WL 1147963 (S.D.N.Y. May 1, 2006).  In the *Beacon* line of cases, courts have held that sending a cease-and-desist letter into New York is not sufficient to create long-arm jurisdiction over the defendant in a declaratory judgment action concerning intellectual property rights.  Here, Dr. Cobbs' conduct is even *less* than that because she did not send a cease-and-

1

desist letter to the plaintiffs.  At most, Dr. Cobbs attempted to negotiate an underlying rights

agreement, based upon federal copyright law, for any exploitations of the plaintiffs' musical

beyond the parties' existing license that the plaintiffs asked Dr. Cobbs to amend for a measly

$1.00.  If the plaintiffs believe there is a ripe controversy for which they may seek justiciable

relief (and that is not time-barred), then they should bring such a case in California rather than in

New York.  The plaintiffs appear to have selected New York solely for their own convenience.

Additionally, regardless of location, the plaintiffs' claims are time-barred by copyright

law's three-year statute of limitations.  17 U.S.C. § 507(b).  According to the plaintiffs' own

complaint, on the very same day in 2019 that the parties entered into the agreement giving Dr.

Cobbs' credit for the musical, Dr. Cobbs asserted that she had underlying rights should the

plaintiffs exploit the musical beyond what was originally anticipated (small, non-profit

productions).  That assertion of underlying rights in 2019 started the clock for the plaintiffs to

challenge Dr. Cobbs' rights.  If the plaintiffs wished to challenge in court Dr. Cobbs' assertion of

underlying rights, then they should have done so within three years of Dr. Cobbs' asserting such

rights in 2019.  But they did not.  Instead, they brought this action nearly six years after she did

so.  Having failed to timely challenge those underlying rights, the complaint is time-barred and

the plaintiffs cannot now seek to challenge Dr. Cobbs' underlying rights.  Title was quieted upon

expiration of the statute of limitations in 2022: Dr. Cobbs has underlying rights in the musical.

## II.    BACKGROUND

Dr. Cobbs is the author of a book entitled *The Hello Girls: America's First Women

Soldier* (the "Book").  The Book is a historical account of a group of American women who

served during World War I in the Army Signal Corps and who were colloquially referred to as

"Hello Girls."  Historical works like the Book, just like any other works, are entitled to copyright

2

protection.  Copyright law does not give Dr. Cobbs rights in the historical facts stated in the Book (17 U.S.C. § 102(b)), but copyright law does give her rights in her original expression in the Book.  In a historical book, the author's original expression can include both the selection and organization/arrangement of the facts and their narrative interpretation; additionally, to the extent a historical work includes fictionalized elements (e.g., imagined dialogue) those too are protected by copyright law.[1]

In 2018, Plaintiffs staged a musical entitled *The Hello Girls* (the "Musical").  There is no question that Plaintiffs had access to and read the Book while they were writing the Musical. Plaintiffs admit in the complaint that they read and relied upon the Book in connection with writing the Musical.  Complaint, ¶¶ 7, 27-29.

Also, in recognition of the fact that the Musical borrows heavily from the Book, it is undisputed that in 2019 the parties entered into an agreement giving Dr. Cobbs credit in relation to the Musical.[2]  In the 2019 agreement, a copy of which is Exhibit 5 to the complaint, Plaintiffs agreed to include the following credit in all programs of productions of the Musical as well as the website for the Musical:

---

[1] Books containing historical facts are subject to copyright protection.  *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 974 (2d Cir. 1980).  Original expression (including fictionalized elements that are built on top of the historical skeleton), and the selection, coordination, and arrangement of theories and facts, are protectible.  *Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 590 (S.D.N.Y.), *aff'd*, 351 F. App'x 516 (2d Cir. 2009); *de Becdelievre v. Anastasia Musical LLC*, No. 16 CIV. 9471 (AKH), 2018 WL 1633769, at *8 (S.D.N.Y. Apr. 2, 2018).  Thus, "[w]orks of history and historical fiction present unique complexities for substantial similarity analysis." *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 293 (S.D.N.Y. 2012). Additionally, a verbatim reproduction of a history book is actionable as copyright infringement. *Hoehling*, 618 F.2d at 980.

[2] When negotiating the 2019 credit agreement, plaintiff Cara Reichel repeatedly described the Book as a "key source."  Compl., Ex. 4 (at 11/11/19 7:06 p.m. email, and 11/13/19 at 10:49 a.m. email).

> With Inspiration from THE HELLO GIRLS by Elizabeth Cobbs, © 2017.
> All Rights Reserved.

In theater (and other art forms), credit carries significant weight.  For example, how credit is given in relation to a theatrical work is a key fact courts consider when evaluating joint authorship claims.  *Thomson v. Larson*, 147 F.3d 195, 203 (2d Cir. 1998) (in discerning how parties view themselves in relation to a work, the way in which the parties bill or credit themselves is significant; case concerned rights in the famous musical *Rent*).

Dr. Cobbs understood that Plaintiffs were only going to be exploiting the Musical in small venues and for non-profit productions.[3]  Dr. Cobbs therefore allowed the agreed upon credit to serve as her consideration for a license to exploit the Musical as a derivative of her Book in those scenarios and under those conditions (small, non-profit productions).

Even if, for the sake of argument, the 2019 credit agreement were not an acknowledgment and admission by Plaintiffs of Dr. Cobbs' underlying rights, the very same day that Dr. Cobbs executed the credit agreement she explicitly asserted underlying rights.  As reflected in Exhibit 3 to the complaint, on December 12, 2019, Dr. Cobbs emailed the plaintiffs:

> I do wish to clarify that if the musical goes into other iterations on film or whatever, I would like to discuss some form of compensation for the rights. I'm aware rights are more limited for nonfiction than fiction, and I respect the extraordinary artistry you and Peter brought to the musical, but I also recognize my work helped to flesh out the story.[4]

---

[3] If the complaint is not dismissed, Dr. Cobbs intends to demonstrate that the plaintiffs introduced themselves to Dr. Cobbs via email on July 30, 2018, as "a non-profit theatre company based in NYC" that was "working on a very tight budget."

[4] Additionally, a month prior to sending that email, Dr. Cobbs referenced an underlying rights agreement concerning the world-famous musical *Hamilton* and a biography of Alexander Hamilton by the historian Ron Chernow: "But more respect is due my contribution. Lin Manuel-Miranda paid Ron Chernow significant royalties for the use of his work—less groundbreaking than mine. I would appreciate at least recognition going forward."  Compl., ¶ 43 (citing Ex. 4 at 1-2).

4

Plaintiffs did not dispute Dr. Cobbs' underlying rights until 2024-2025 when, out of the blue, Plaintiffs approached Dr. Cobbs and asked her to amend that 2019 agreement. Their proposed amendment was that in exchange for one whole dollar ($1.00), Dr. Cobbs agree that she has no copyright interest in the Musical and that Plaintiffs would no longer be obligated to include the credit the parties had previously agreed upon.

That proposal did not sit well with Dr. Cobbs. She engaged an attorney whose practice focuses on live theater (Marc Sendroff) to assist her in her direct communications with Plaintiffs. Complaint, Exs. 9-10. Then she engaged another attorney, whose practice focuses on intellectual property disputes and who is located in both New Jersey and New York (Jordan Greenberger), to send a letter to Plaintiffs (via their agent, Susan Gurman). Compl., Ex. 11. In that letter, Dr. Cobbs asserted that she would not agree that she has no intellectual property interests in the Musical. Dr. Cobbs also asserted that if Plaintiffs wanted to have a serious discussion about amending the 2019 agreement or otherwise negotiating a deal with Dr. Cobbs to account for Plaintiffs' anticipated exploitation of the Musical beyond the scope of the original license (which was limited to small, non-profit productions), then Plaintiffs would need to reconsider what would be an appropriate amount of compensation due to Ms. Cobbs. The one-dollar offer was, frankly, insulting.

Plaintiffs' response to that letter came from a California attorney (Joaquim Steinberg). Compl., Ex. 12. Dr. Cobbs' attorney sent a reply letter to Plaintiffs' California lawyer (Compl., Ex. 13), and then the attorneys also had various telephone calls in an attempt to negotiate a new deal concerning larger, for-profit, exploitations of the Musical. The sticking point in the negotiation was whether Dr. Cobbs' financial consideration would be a flat-fee buyout (as

5

proposed by Plaintiffs) or a royalty based on revenues from exploitations of the Musical (as reasonably proposed by Dr. Cobbs and consistent with industry practice).

Dr. Cobbs had hoped to avoid an adversarial relationship. Nor did she believe the relationship had become adversarial because, to her knowledge, at that time Plaintiffs had not violated the license. Neither she nor her lawyer sent a cease-and-desist letter. Dr. Cobbs, through counsel, did write that she:

> (a) expects [Plaintiffs] to abide by the Agreement with respect to authorized (i.e., small, non-profit) productions of the Musical;
>
> (b) reserves the right to revoke that license at any time and without prior notice; and
>
> (c) will deem any exploitations of the Musical to be a willful infringement of her copyright interests if such exploitations are commercial and therefore outside the scope of the original license and/or occur after any termination of the license. [Complaint, Ex. 13.]

She also wrote that "if (c), above, occurs then [Plaintiffs] should reasonably expect [Dr.] Cobbs to enforce her rights, notify relevant third-parties of her claims (e.g., those potentially liable for contributory and/or vicarious copyright infringement), and pursue available remedies." *Id.*

But Dr. Cobbs did not do that before Plaintiffs commenced this action. To her knowledge, prior to the commencement of this action the plaintiffs had not exploited the Musical outside the scope of the original license.[5] She knew that they would like to do that, but to Dr. Cobbs' knowledge Plaintiffs had not yet exceeded the license and therefore had not yet infringed her copyright in the Book prior to the commencement of this action.

---

[5] Following the commencement of this action, it did come to Dr. Cobbs' attention that the plaintiffs may have exceeded the limited license by producing the Musical in a larger for-profit setting in Syracuse, New York in September 2025. https://www.syracusestage.org/hello. Dr. Cobbs reserves all rights and claims in relation thereto.

6

Rather than continue negotiating whether Dr. Cobbs would receive a royalty (the reasonable, industry standard) or a flat-fee (as proposed by Plaintiffs), Plaintiffs without warning to Dr. Cobbs filed this declaratory judgment action in New York. But as explained in this motion, any such action should have been brought in California and should have been brought sooner if Plaintiffs wanted to dispute Dr. Cobbs' rights in the Musical.

## III.    JURISDICTIONAL FACTS

Plaintiffs' allegation that the Court has personal jurisdiction over Dr. Cobbs is found in paragraph 17 of the Complaint, where they allege:

> The Court has personal jurisdiction over Defendant Dr. Cobbs because she has wrongfully asserted infringement claims against Plaintiffs in the Southern District of New York. Dr. Cobbs attended a performance of The Hello Girls Musical in New York, and Dr. Cobbs' false assertions of copyright infringement were and are directed at Plaintiffs in this District and are intended to interfere with and prohibit further performances of The Hello Girls Musical, including ones in this District. Dr. Cobbs has regularly promoted her book in this District, appeared at a performance of The Hello Girls Musical to give a post-show discussion within this District, and has appeared at or participated in other events related to The Hello Girls Musical or The Hello Girls Book within this District.

Respectfully, Plaintiffs are wrong. Prior to commencing this action, Plaintiff has not asserted infringement claims against Plaintiffs (in any location), and even if her communications could be deemed such a claim they were not asserted "in" New York or directly at New York. Dr. Cobbs, at all relevant times, has been in California. Additionally, her lawyer's communications were (a) directed to Plaintiffs' California attorney, Mr. Steinberg (other than the first letter to Plaintiffs via their agent); (b) made while her attorney was located in New Jersey *or* New York (*see* the accompanying Declaration of Jordan Greenberger); (c) concerned federal copyright law, rather than New York state law; and (d) did not threaten bringing any type of action or sending any type of letter specifically to New York or specifically regarding

7

exploitations of the Musical in New York.  The negotiations concerning future exploitations of the Musical were based upon federal copyright law, and were not necessarily limited to Broadway (or off-Broadway) productions.  Whether in Chicago, Berkeley, Cleveland or Katmandu, from Dr. Cobbs' perspective, larger, for-profit productions in any location exceed the scope of the original license.

As explained in her accompanying declaration, Dr. Cobbs' contacts with New York are minimal.  Dr. Cobbs is retired and resides in California, where she has paid income tax since she was a teenager.  She has never paid taxes in New York.  She has never resided in New York, and she has never been employed or had a business in New York.  She does not own, lease, or maintain any office, facilities, real or personal property, bank account, mailing address, or telephone number in New York.  She does not have any employees in New York, and she does not have any agents in New York (other than the lawyers representing her in this case).  Indeed, she has not physically been in the State of New York for any period of time in several years.  Her only recent physical presence in New York was earlier this year, when she flew to JFK airport for a trip to visit family in New Jersey.  Dr. Cobbs simply has not purposefully availed herself of the privilege of conducting business activities in New York.  Nor has she directed any business activities toward New York.

With respect to the Book, she wrote it in California and the Book was published in Massachusetts.  She has not specifically targeted any advertisements of her Book to New York, and any sales of the Book in New York have been merely incidental to the fact that the Book is available for sale on Amazon and was published by a reputable publisher.  Nor has Dr. Cobbs regularly promoted the Book in New York.  In or about December of 2018, she was invited by Plaintiffs to come to New York to attend a production of their musical, sign cast members' copies

8

of my book, and deliver a talk following the performance.  Additionally, in or about October 2019 she gave a talk about the Book at the National Arts Club in New York City, at their express invitation.  But Dr. Cobbs also gave numerous other talks about the Book around the country – both to live audiences in various states and in radio and television interviews.

The purported issue raised by Plaintiffs' attempt in 2024-2025 to renegotiate the 2019 credit/license agreement would have arisen regardless of whether Dr. Cobbs had ever travelled to New York in 2018 to view a performance of the musical or in 2019 to speak at the National Arts Club, and regardless of any incidental sales of her book in New York on Amazon.com.  The purported issue raised in the complaint – whether the Musical copies protectible elements of the Book – would exist regardless of those things.  Dr. Cobbs' extremely limited New York contacts did not cause this litigation.

## IV.    <u>ARGUMENT</u>

### A.    <u>The Court Lacks Personal Jurisdiction Over Dr. Cobbs</u>

The Court should dismiss the complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014).  Where a court relies on pleadings and affidavits, the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant; the court construes the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. *V&A Collection, LLC v. Guzzini Properties Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022).

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is "a statutory basis for exercising personal

jurisdiction" (*Marvel*, 726 F.3d at 128), and second deciding whether the exercise of jurisdiction comports with due process (*Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014)).

In this federal question case, personal jurisdiction over a non-resident defendant is determined by the law of the jurisdiction in which the district court sits, i.e., New York.  *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997).  For this court to have personal jurisdiction over Dr. Cobbs, New York law must provide a basis for exercising personal jurisdiction and such jurisdiction cannot offend federal standards of due process.  *Holey Soles*, 2006 WL 1147963 at *3.  As explained below, New York law does not provide such a basis for exercising personal jurisdiction over Dr. Cobbs.

       1.     There Is No General Jurisdiction Over Dr. Cobbs

New York's general jurisdiction statute is CPLR § 301.  Under CPLR § 301, the exercise of jurisdiction over an individual like Dr. Cobbs depends on their presence, consent, domicile, and business activities in New York.  *Seaweed, Inc. v DMA Prod. & Design & Mktg. LLC.*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002).  Occasional visits to New York are not sufficient. *Shakour v. Fed. Republic of Germany*, 199 F. Supp. 2d 8, 15 (E.D.N.Y. 2002).  "Section 301 preserves the notion that a court may exercise general jurisdiction over a non-domiciliary defendant if the defendant is engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction."  *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015) (internal quo. om.).

To meet this standard, a defendant must be present in New York, "not occasionally or casually, but with a fair measure of permanence and continuity."  *Fort Knox Music*, 139 F. Supp. 2d at 509 (quoting *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d

1039, 1043 (2d Cir.1990)).  The test is a "simple pragmatic one" which is "fact sensitive because each case is dependent on its own circumstances." *Id.*  "Using this test, Courts have generally focused on a defendant's maintenance of an office in New York, the solicitation of business in New York, the presence of New York accounts or other property, and the presence of New York-based employees or agents." *Id.*

Dr. Cobbs does not have any such continuous and systematic contacts with New York. She is not domiciled in New York, she does not reside in New York, and she does not have an office in New York; at all relevant times, Dr. Cobbs has been domiciled, resided and employed in California or otherwise outside the State of New York.[6]  She does not own property in New York, or have any bank accounts in New York.  She has not consented to jurisdiction in New York, she is not regularly present in New York, she does not solicit business in New York, and she does not otherwise have continuous and systematic business activities in New York.

To the extent that her Book is available for sale on Amazon, that is not enough to create general jurisdiction.  *Sidik v. Royal Sovereign Int'l, Inc*., No. 17-CV-7020 (JS)(ARL), 2020 WL 5441306, at *4 (E.D.N.Y. Sept. 10, 2020) ("Taishan's online presence is insufficient to meet the 'doing business' showing for purposes of general jurisdiction.").  Dr. Cobbs is not subject to general jurisdiction in New York under CPLR § 301.

2.    There Is No Specific Jurisdiction Over Dr. Cobbs

New York's specific jurisdiction statute is CPLR § 302.  Section 302 has several prongs, but the only prong that Plaintiffs appear to be relying upon is CPLR § 302(a)(1), which

---

[6] " 'Domicile' implies physical presence coupled with an intention to remain indefinitely, i.e., to make the state one's 'home,' while residence entails mere physical presence not necessarily accompanied by that intention."   Siegel, N.Y. Prac. § 81 (6th ed.).

11

empowers a court to exercise personal jurisdiction over a defendant who "transacts any business within the state," so long as the claims against the defendant "aris[e] from" this business. CPLR § 302(a)(1).[7] To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (i) the defendant must have transacted business within the state; and (ii) the claim asserted must arise from that business activity. *Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 473 (S.D.N.Y. 2022), *aff'd*, 66 F.4th 69 (2d Cir. 2023).

The "transacting business" prong of the section 302(a)(1) analysis requires "purposeful activity — some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34 (N.Y. 1967)); *see also*, *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501 (N.Y. 2007). "[O]ne transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195 (N.Y. 1988). Ultimately, "[a] court is to consider the totality of the circumstances surrounding the foreign defendant's interactions with the state." *Edwardo*, 579 F. Supp. 3d at 474-74.

Dr. Cobbs has not purposefully availed herself of the privilege of doing business in New York, and any argument that her minimal connections with New York satisfy section 302(a)(1) are foreclosed by the Second Circuit's decision in *Beacon*. In *Beacon* (715 F.2d 757), plaintiff

---

[7] Plaintiffs do not allege that Dr. Cobbs committed a tort within or without the State of New York, nor do they allege that she owns any property in New York (which she does not).

12

Beacon, a New York corporation, sought a declaration that its products did not infringe various trademarks and copyrights over weight-reduction equipment that were held by defendant Menzies, an individual in California. *Id.*, at 759. Menzies, who sold an unspecified amount of her weight-reduction equipment by mail order in New York, had also sent plaintiff Beacon a cease-and-desist letter, prompting Beacon's action for declaratory judgment. *Id.*, at 760–61. In finding the requirements of section 302(a)(1) had not been met, the Second Circuit made particular note that Menzies' sales in New York bore no nexus to the plaintiff's action for a declaration of non-infringement:

> Beacon does not allege that Menzies' shipment of goods into New York are in any way injurious to it. In fact, Menzies' shipments of goods are irrelevant to Beacon's declaratory judgment action and Beacon's cause of action would exist regardless of whether Menzies' products were sent to New York. The present controversy arose as a result of Menzies' "cease and desist" letter, not her New York commercial activity. Accordingly, we find no "articulable nexus." [*Id.*, at 765.]

The Second Circuit revisited *Beacon* in *Marvel Characters*. 726 F.3d 119, 128-31. In *Marvel Characters*, comic book publishers brought a declaratory judgment action against the heirs of a freelance artist whose artworks depicted iconic characters, challenging the validity of the heirs' notices purporting to terminate the artist's assignment of his copyright to publishers pursuant to section 304 of the Copyright Act (17 U.S.C. § 304). Two of the heirs, Lisa and Neal Kirby, were California residents and moved to dismiss for lack of personal jurisdiction. The district court found that there was long-arm jurisdiction, but on appeal the Second Circuit vacated that holding. The only acts that could give rise to long arm jurisdiction were the sending of section 304 termination notices to the publisher in New York. Applying *Beacon* and *Ehrenfeld v. Bin Mahfouz*, 489 F.3d 542 (2d Cir. 2007), the *Marvel Characters* court held that the two heirs were not subject to long-arm jurisdiction under CPLR § 302(a)(1). The two heirs were not

13

"present" in New York (physically or through some continuous contact), and the communications were not part, or in contemplation, of a course of business dealings with the publisher. "Finally, and perhaps most importantly, the Termination Notices, like the letter in *Beacon Enterprises* and the communications in *Ehrenfeld*, asserted legal rights under a body of law other than New York's. What the Kirby siblings seek to vindicate are purported termination rights under section 304(c) of the federal copyright laws; they seek no privilege or benefit conferred by New York State law." 726 F.3d at 128-131.

District court cases have also followed *Beacon*.[8] For example, in *Fort Knox Music, Inc. v. Baptiste*, plaintiffs brought an action seeking to prohibit the defendant songwriter from interfering with plaintiffs' rights and copyright in a musical composition. 139 F. Supp. 2d 505 (S.D.N.Y. 2001). The action was based on the sending of defendant's cease-and-desist letters and defendant's relationship with the New York-based music licensing clearinghouse Broadcast Music Inc. ("BMI"). The district court found, however, that like the sales in *Beacon* undertaken by Menzies in New York, the defendant's relationship with BMI was largely tangential to the declaratory judgment action because the action would exist regardless of whether BMI served as the licensing clearinghouse for the song, or whether BMI engaged in royalty collection in New York or in any other jurisdiction. The *Fort Knox* court accordingly found that plaintiffs had failed to demonstrate a proper nexus between the action and defendant's relationship with BMI, which could serve as a sufficient basis for the exercise of personal jurisdiction over defendant. *Id.*, at 510–11.

---

[8] Treatises on intellectual property also agree that "[s]ending a cease and desist demand is not regarded as an act by which the sender purposefully avails itself of doing business in the recipient's state." 5 McCarthy on Trademarks and Unfair Competition § 32:38 (5th ed.)

14

The *Fort Knox* court similarly found plaintiffs' argument that defendant has transacted business in the state by sending multiple cease-and-desist letters to defendants to be without merit. "The Second Circuit has been clear that a cease and desist letter alone is insufficient to confer jurisdiction under section 302(a)(1). Rather, 'it is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities in the forum state thus invoking the benefits and protections of its laws.'" *Fort Knox*, 139 F. Supp. 2d at 511 (quoting *Beacon*, 715 F.2d at 766). In particular, "[i]t is difficult to characterize [a] letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the 'benefits and protections' of New York law." *Id.* While the *Fort Knox* defendant's letters were forceful and numerous, such letters in no way specified New York as an appropriate forum for resolution of the dispute or otherwise sought the protection or benefit of New York laws. As such, the Court found that it could not appropriately exercise its jurisdiction on this basis.

Another Southern District case following *Beacon* – and dismissing an intellectual property declaratory judgment action for lack of personal jurisdiction – is *Holey Soles*. 2006 WL 1147963 (S.D.N.Y. May 1, 2006). In that case, the plaintiff sought a declaratory judgment to determine whether the defendants held a copyright for the design of certain foam clog shoes and whether plaintiff had violated such a copyright if it existed. After finding that there was no general jurisdiction over the defendants (*id.*, at *3-8), the court turned to the plaintiff's long-arm arguments and found that "*Beacon* determines the outcome here." (*id.*, at *8-9). First, the cease-and-desist letter sent by the defendants to plaintiff was sent from Colorado to Vancouver (Canada) and did not assert any rights under New York law or allege that any infringement was taking place in New York. Second, none of the plaintiff's claims arose from the defendants'

15

business transactions in New York (e.g., the sale of shoes in New York); those business transactions did not relate to the defendant's claim that the plaintiff in particular was infringing its copyright (and trademark), or to its insistence that the plaintiff "cease and desist", but rather to the defendant's attempt to promote and sell its own products. *Id.*, at *9.

Another case applying *Beacon*, and dismissing for lack of personal jurisdiction, is *Kiss Nail*. 2020 WL 2924614 (S.D.N.Y. Mar. 5, 2020). In that case, the plaintiff sought a declaratory judgment of non-infringement of a certain patent for magnetic false eyelash products and the defendant moved to dismiss for lack of personal jurisdiction. The court held that there was no long-arm jurisdiction because: (i) the cease and desist letters to third parties were not sent to New York, and were not sent to solicit business, to establish a continuing relationship with any third party in New York, or to otherwise advance a goal other than to allege patent infringement; and (ii) the plaintiff's claim did not arise out of the defendant's sales of its own magnetic eyelash products to customers in New York. *Id.*, at *5-7.

*Beacon*, *Marvel Characters*, *Fort Knox*, *Holey Soles* and *Kiss Nails* point to the conclusion that there is no long-arm jurisdiction over Dr. Cobbs. Dr. Cobbs is a California resident who has not purposefully availed herself of the privilege of conducting activities in New York. Other than her lawyer's letter to Plaintiffs (via their agent in New York), Dr. Cobbs' lawyer's communications were directed to Plaintiffs' California attorney (Mr. Steinberg); additionally, many of those communications were made from her lawyer's home-office in New Jersey. The communications were not cease-and-desist letters inasmuch as Dr. Cobbs was not aware of Plaintiffs exceeding the scope of the license. To the extent that the communications concerned potentially negotiating a new deal, it was Plaintiffs who first reached out to Dr. Cobbs in California to amend the original credit-agreement, and the discussions concerning commercial

16

large-scale productions of the Musical (beyond the scope of the original license) were not squarely focused on exploitations of the Musical in New York or any other specific location; nor was the location of Plaintiffs' residence relevant or material to those negotiations.

Further, the rights at issue arise under federal law (the Copyright Act; 17 U.S.C. § 101 et seq.) not under New York law. In *Marvel Characters*, it was perhaps "most important" that the issues arose under federal copyright law rather than New York law; the same is true here.

Lastly, any of Dr. Cobbs' contacts with New York concerning the Musical all pre-date Plaintiffs' attempt to re-negotiate and did not cause the purported rights dispute. Her travels to New York in 2018 to attend a performance have nothing to do with whether Plaintiffs may now produce commercial large-scale productions of the Musical; the purported issue raised by Plaintiffs in 2024-2025 would have arisen regardless of whether Dr. Cobbs had ever travelled to New York in 2018 to view a performance of the Musical (Compl., ¶ 40).

Nor can Plaintiffs' New York conduct, such as premiering the Musical in New York in 2018 and including a reference to Dr. Cobbs in the program for those performances, be attributed to Dr. Cobbs for jurisdictional purposes.[9] Compl., ¶¶ 34-37. It is axiomatic that it is the *defendant's* contacts with New York, not the *plaintiffs'* contacts with and voluntary conduct in New York, that matters for purposes of personal jurisdiction over the defendant. *See generally*, *Best Van Lines*, 490 F.3d at 242 (discussing constitutional limits on personal jurisdiction).

B.    **The Statute Of Limitations Bars Plaintiffs' Complaint**

Independent of the court's lack of personal jurisdiction over Dr. Cobbs, the complaint should be dismissed because under copyright law's three-year statute of limitations period the

---

[9] Plaintiffs also performed the Musical at the Kennedy Center (Compl., ¶ 43), which the Court may take judicial notice is in Washington, D.C.

plaintiffs' time to seek the declaratory relief they seek expired in December 2022.  17 U.S.C. § 507(b); *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (declaratory judgment case time-barred where copyright co-ownership claim in song accrued in 1961 but plaintiffs did not bring action until 1987).  Having failed to timely bring such an action, title was quieted in 2022: Dr. Cobbs has underlying rights in the Musical.

Why December 2022?  Because three-years prior, in December 2019, is when Dr. Cobbs explicitly expressed underlying rights in the Musical.  The stage was set in November 2019, when Dr. Cobbs emailed Plaintiffs with a reference to the underlying rights agreement concerning the famous musical *Hamilton* based upon Ron Chernow's biography of Alexander Hamilton.  Compl., Ex. 4 at 1-2.  Then on December 12, 2019:

(a) the parties' entered into the "With inspiration from…" credit agreement (Complaint, ¶¶ 47-48 and Ex 5); and

(b) Dr. Cobbs expressly indicated in an email to Plaintiffs that she should receive "compensation for the rights" if exploitations of the Musical went beyond small, non-profit productions (Complaint, ¶ 50 and Ex. 3 (at 1)).

Those events, both taking place on December 12, 2019, triggered the time for Plaintiffs to seek declaratory relief disputing Dr. Cobbs' rights in the Musical.  The clock for them to repudiate the credit agreement and contest Dr. Cobbs' claim to compensation started ticking no later than December 12, 2019.

This case is analogous to *Aday v. Sony Music Ent., Inc.*, No. 96 CIV. 0991 (MGC), 1997 WL 598410, at *5 (S.D.N.Y. Sept. 25, 1997).  In *Aday*, a famous recording artist and performer professionally known as Meat Loaf sued his record label (and related entities) for unpaid royalties and also brought copyright infringement claims premised upon his assertion that he was

18

not an employee for hire notwithstanding the work for hire language in the underlying recording contracts. The Court dismissed the copyright claims as time-barred because the underlying contracts containing the allegedly invalid "work for hire" provisions were entered into in 1977, nineteen years before the action was commenced. *Id.* at *4-5. The "plaintiffs had reason to know in 1977 about any of the problems with the 'work for hire' provision that they now contend violates the Copyright Act." *Id.* at *5.

Similarly, here, Plaintiffs had reason to know in 2019, when the parties executed the "With inspiration from…" contract, of any purported issue with Dr. Cobbs' interests in the Musical. Therefore, Plaintiffs should have brought a declaratory relief action within three years of 2019. Plaintiffs, however, did not commence this action until August 2025, which is almost six years after those triggering events in December 2019. Having failed to timely commence an action, Plaintiffs' claims are time-barred; they can no longer dispute that Dr. Cobbs is entitled to compensation from exploitations of the Musical beyond the existing license embodied in the credit agreement. *See also*, *Barksdale v. Robinson*, 211 F.R.D. 240, 244 (S.D.N.Y. 2002) (statute of limitations began to run on musician's copyright ownership claim no later than when musician, through his counsel, made claim for compositions in letter to alleged misappropriator).

This action arises under the Copyright Act. The Copyright Act has a three-year statute of limitations period, which provides "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b); *see also*, *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 144 S. Ct. 1135 (2024).

"Determining when a claim accrues under the Copyright Act depends on the nature of the claim asserted." *Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 145 F.4th 257, 273 (2d Cir.

19

2025).  There are typically three types of claims asserted in copyright cases: infringement,

ownership, and co-authorship.

A copyright infringement claim accrues when the copyright holder discovers, or with due

diligence should have discovered, the infringement.  *Michael Grecco Prods., Inc. v. RADesign,*

*Inc.*, 112 F.4th 144, 150 (2d Cir. 2024).

A copyright ownership claim accrues only once, when a reasonably diligent plaintiff

would have been put on inquiry as to the existence of his right in the work.  *Horror Inc. v. Miller*,

15 F.4th 232, 257 (2d Cir. 2021).

Authorship claims accrue when plain and express repudiation of authorship is

communicated to the claimant, and are barred three years from the time of repudiation; express

repudiation includes an express assertion of sole authorship or ownership, when a work is

published without the alleged co-author's name on it; when alleged co-authors are presented with

a contract identifying only one of them as the sole owner and copyright holder, and when alleged

co-owners learn they are entitled to royalties that they are not receiving.  *Id.*  "Repudiation in this

copyright context resembles the doctrine of adverse possession in real property."  *Everly v.*

*Everly*, 958 F.3d 442, 451 (6th Cir. 2020) (quoting 3 Melville B. Nimmer and David Nimmer,

Nimmer on Copyright § 12.05[C][1] (Lexis 2020).

This case does not fit nicely into any of those three categories.  Plaintiffs are not asserting

an infringement claim and Dr. Cobbs has not (yet) asserted an infringement claim.  Instead,

Plaintiffs seek a declaration of *non*-infringement *if* they pursue a commercial large-scale

20

production of the Musical.[10]  Nor are Plaintiffs explicitly seeking a declaration that the parties are co-authors or co-owners of the Musical.

Although somewhat of a round peg in a square hole, this case is at its core an ownership dispute in which Plaintiffs seek judicial confirmation that they are the sole owners of the Musical.  *Cf.*, *Vasquez v. Torres-Negron*, No. 06 CIV 619 CM, 2007 WL 2244784, at *9 (S.D.N.Y. July 11, 2007) (applying statute of limitations where plaintiffs alleged that a nonowner had wrongfully registered a copyright; claim for cancellation of a wrongful registration was found "quite similar to a claim for determination of sole ownership: both govern questions of who owns certain rights and seek to 'quiet title.'").

Whether Plaintiffs are the sole owners of the Musical depends on whether the Musical copies protectible elements of the Book.  If the Musical copies protectible elements of the Book, Plaintiffs require Dr. Cobbs' permission to exploit the Musical because Plaintiffs copyright in the Musical extends only to the material that they themselves contributed.  17 U.S.C. § 103(b).[11] "Put differently, 'the aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work.'"  *Atticus*, at 264 (quoting *Stewart v. Abend*, 495 U.S. 207, 223, 110 S.Ct. 1750 (1990)).  Therefore, any protectible elements from the Book that appear in the Musical

---

[10] The speculative possibility of such a production begs the question whether there is a ripe dispute appropriate for judicial resolution, or if instead Plaintiffs are seeking an advisory opinion which is typically inappropriate under the Declaratory Judgment Act.  *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959 (1969) (federal courts do not render advisory opinions).

[11] A musical or play based upon an underlying book is a paradigmatic example of a derivative work.  17 U.S.C. § 101 (defining a derivative work as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted…"); *Atticus*, 145 F.4th at 263.

21

remain Dr. Cobbs' property and require her permission to be exploited. *Gilliam v. Am. Broad. Companies, Inc.*, 538 F.2d 14, 20 (2d Cir. 1976) ("Since the copyright in the underlying script survives intact despite the incorporation of that work into a derivative work, one who uses the script, even with the permission of the proprietor of the derivative work, may infringe the underlying copyright."); *Davis v. E. I. DuPont deNemours & Co.*, 240 F.Supp. 612, 621 (S.D.N.Y.1965) (defendants held to have infringed when they obtained permission to use a screenplay in preparing a television script but did not obtain permission of the author of the play upon which the screenplay was based).

But if Plaintiffs wanted to challenge whether the Musical is a derivative of the Book or otherwise contains protectible elements of the Book, then they should have done so within three years of 2019 when the parties entered into the credit agreement and Dr. Cobbs asserted underlying rights in her email.  Having failed to do so, Plaintiffs' complaint is time-barred.  The parties entered into the credit agreement in December 2019.  Compl., ¶¶ 47-48 and Ex. 5.  On the same day that Dr. Cobbs signed the credit agreement in December 2019, she stated that she "wish[ed] to clarify that if the musical goes into other iterations on film or whatever, I would like to discuss some form of compensation for the rights."  Compl., ¶ 50 and Ex. 3 at 1.  Therefore, their quiet-title claim accrued in December 2019.

If Plaintiffs intended to seek declaratory relief, then the clock for them to repudiate the credit agreement and contest Dr. Cobbs' claim to compensation from derivative works started in December 2019.  *Aday*, 1997 WL 598410, at *5 (S.D.N.Y. Sept. 25, 1997); *Barksdale v. Robinson*, 211 F.R.D. at 244.  But Plaintiffs did not commence this action until 2025, which was six years after the claim accrued.  Therefore, the complaint should be dismissed for failure to

state a claim; the court need not look outside the four-corners of the complaint to determine that the claims are barred by the statute of limitations.

Lastly, dismissing the complaint based upon the statute of limitations – which would foreclose Plaintiffs from disputing that Dr. Cobbs has an ownership interest in the Musical – promotes the principles of repose integral to a properly functioning copyright market, and would be consistent with the Supreme Court's recognition that "Congress' paramount goal in revising the 1976 [Copyright Act was] enhancing predictability and certainty of copyright ownership." *Merchant*, 92 F.3d at 57. The copyright laws are designed to enhance the predictability and certainty of copyright ownership. *See Community for Creative Non–Violence*, 490 U.S. at 749, 109 S.Ct. at 2177–78; *Netzer v. Continuity Graphic Assocs.*, Inc., 963 F. Supp. 1308, 1318 (S.D.N.Y. 1997). Holding that the claims are time-barred provides such predictability and certainty concerning Dr. Cobbs' underlying rights – she has them!

## V.    CONCLUSION

The complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(2) and 12(b)(6). The Court lacks personal jurisdiction over Dr. Cobbs, and even if it has jurisdiction over her Plaintiffs' claims are time-barred by copyright law's three-year statute of limitations (thereby also making any transfer of the case to an appropriate district futile).

Dated: October 13, 2025

FIRESTONE GREENBERGER PLLC
*Attorneys for Dr. Cobbs*
  /s/ Jordan Greenberger
Jordan Greenberger
Callie J. Kramsky
104 West 40th St., 4th Fl.
New York, NY 10018
212-597-2255
jg@firegreenlaw.com
ck@firegreenlaw.com

23