**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARA REICHEL, an individual, and PETER MILLS, an individual,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ELIZABETH COBBS, an individual,<br><br>　　　　Defendant. | Case No.  1:25-cv-06626-JAV-RFT<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S RULE 12 MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    STATEMENT OF FACTS ................................................................................. 1

III.   ARGUMENT ..................................................................................................... 5

       A.     Personal Jurisdiction ............................................................................ 6

       B.     Statute of Limitations .......................................................................... 12

              1.     Under The *Walker* Test, Plaintiffs' Claims Are for Non-Infringement, Not Ownership ................................................................................. 13

              2.     Even if this Were an Ownership Claim, Plaintiffs' Claims Would Not Be Time-Barred. ................................................................... 18

              3.     Defendant's Time-Bar Argument Cannot be Resolved on a Motion to Dismiss ........................................................................................ 23

              4.     To the Extent that the Court Finds this Action Pertains to Ownership and Not Infringement, Plaintiffs Should Be Granted Leave to Amend. .......... 25

IV.    CONCLUSION ................................................................................................. 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aday v. Sony Music Ent., Inc.*,
 1997 WL 598410 (S.D.N.Y. Sept. 25, 1997)..............................................................................22

*Arista Records, LLC v. Doe 3*,
 604 F.3d 110 (2d Cir. 2010).....................................................................................13, 15

*Balestra v. ATBCOIN LLC*,
 380 F. Supp. 3d 340 (S.D.N.Y. 2019).....................................................................................9

*Barclays Am./Bus. Credit, Inc. v. Boulware*,
 542 N.Y.S.2d 587 (1989).....................................................................................8

*Barksdale v. Robinson*,
 211 F.R.D. 240 (S.D.N.Y. 2002) .....................................................................................14, 22

*Beacon Enterprises, Inc. v. Menzies*,
 715 F.2d 757 (1983).....................................................................................9

*Beastie Boys v. Monster Energy Co.*,
 983 F. Supp. 2d 338 (S.D.N.Y. 2013).....................................................................13, 15, 17

*Bensusan Rest. Corp. v. King*,
 937 F.Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997) .....................................6

*Best Van Lines, Inc. v. Walker*,
 490 F.3d 239 (2d Cir. 2007).....................................................................7, 13, 14, 15

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
 369 F.3d 212 (2d Cir. 2004).....................................................................................24

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
 158 F. Supp. 3d 184 (S.D.N.Y. 2016).....................................................................................15

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
 208 F. Supp. 3d 494 (E.D.N.Y. 2016) .....................................................................................23

*Davis v. Blige*,
 505 F.3d 90 (2d Cir. 2007).....................................................................................19

*Davis v. E. I. DuPont deNemours & Co.*,
 240 F. Supp. 612 (S.D.N.Y. 1965).....................................................................................16

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
    850 N.E.2d 1140 (2006)..............................................................................................7

*Everly v. Everly*,
    958 F.3d 442 (6th Cir. 2020) ....................................................................................22

*Farkas v. Farkas*,
    830 N.Y.S.2d 220 (N.Y. App. Div. 2d Dept. 2007) .................................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..................................................................................................14

*Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*,
    80 F. Supp. 3d 535 (S.D.N.Y. 2015)........................................................................16

*Fort Knox Music, Inc. v. Baptiste*,
    139 F. Supp. 2d 505 (S.D.N.Y. 2001)...............................................................10, 11

*Gilliam v. Am. Broad. Cos., Inc.*,
    538 F.2d 14 (2d Cir. 1976)........................................................................................16

*Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*,
    2006 WL 1147963 (S.D.N.Y. May 1, 2006) ...........................................................10

*Horror Inc. v. Miller*,
    15 F.4th 232 (2d Cir. 2021) ......................................................................................23

*Jonas v. Est. of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015)....................................................................6, 7

*Keep on Kicking Music, Inc. v. Universal Music Publ'g Grp.*,
    No. 23-CV-4400 (JPO), 2024 WL 3675936 (S.D.N.Y. Aug. 5, 2024) .....................9

*Kiss Nail Prods., Inc. v. One Two Cosms., LLC*,
    2020 WL 2924614 (E.D.N.Y. Mar. 5, 2020)....................................................10, 11

*Kreutter v. McFadden Oil Corp.*,
    522 N.E.2d 40 (1988)..................................................................................................7

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011).................................................................12, 19, 20, 21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2016), *certified question accepted sub nom. Licci v.*
    *Lebanese Canadian Bank*, 18 N.Y.3d 952 (2012), *and certified question*
    *answered sub nom. Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012) ....7, 8

*MacDermid, Inc. v. Deiter*,
   702 F.3d 725 (2d Cir. 2012)......................................................................................6

*Marvel Characters, Inc. v. Kirby*.
   726 F.3d 119 (2d Cir. 2013).....................................................................................10

*MCA, Inc. v. Wilson*,
   425 F. Supp. 443 (S.D.N.Y. 1976), *aff'd and modified*, 677 F.2d 180 (2d Cir.
   1981) .......................................................................................................................15

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*,
   375 F. Supp. 2d 252 (S.D.N.Y. 2005).........................................................12, 18, 21

*Merchant v. Levy*,
   92 F.3d 51 (2d Cir. 1996) .......................................................................................12

*Morris v. People's Republic of China*,
   478 F. Supp. 2d 561 (S.D.N.Y. 2007).....................................................................24

Ortiz v. City of New York, 755 F.Supp.2d 399, 401 (E.D.N.Y.2010) ..........................23

*PDK Labs v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997)........................................................................ *passim*

*Philogene v. Duckett*,
   2018 WL 3946447 (S.D.N.Y. Aug. 16, 2018)....................................................12, 15

*PK Music Performance, Inc.* v. *Timberlake*,
   2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018)..........................................................16

*Psihoyos v. John Wiley & Sons, Inc.*,
   748 F.3d 120 (2d Cir. 2014).....................................................................................12

*Robert Smalls Inc. v. Hamilton*,
   No. 09 CIV. 7171 DAB JLC, 2010 WL 3238955 (S.D.N.Y. July 19, 2010) ..........23

*Sadiant, Inc. v. Penstock Consulting, LLC*,
   2024 WL 2847195 (S.D.N.Y. May 30, 2024) ..........................................................13

*Simmons v. Stanberry*,
   810 F.3d 114 (2d Cir. 2016).....................................................................................21

*Vasquez v. Torres-Negron*,
   2007 WL 2244784 (S.D.N.Y. July 11, 2007) ..........................................................22

*Walker v. Carter*,
   210 F. Supp. 3d 487 (S.D.N.Y. 2016).......................................................12, 13, 14

*Warner Chappell Music, Inc. v. Nealy*,
    601 U.S. 366 (2024)............................................................................................12, 23

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989)..............................................................................17

*Wilson v. Dynatone Publ'g Co.*,
    892 F.3d 112 (2d Cir. 2018)..............................................................12, 19, 22, 23

*Zuill v. Shanahan*,
    80 F.3d 1366 (9th Cir. 1996) ...............................................................................23

**Statutes**

17 U.S.C. § 106.............................................................................................13, 15, 17

17 U.S.C. § 201.............................................................................................13, 14, 24

17 U.S.C. § 501......................................................................................................17

17 U.S.C. § 507......................................................................................................12

28 U.S.C. § 1404(a) ...............................................................................................11

**Other Authorities**

*Report of the Register of Copyrights on the General Revision of the U.S.*
    *Copyright Law:* 1965 ...........................................................................................17

v

## I. PRELIMINARY STATEMENT

This is a case about copyright infringement, not ownership. The only cause of action seeks a declaratory judgment of noninfringement. Plaintiffs Cara Reichel and Peter Mills ("Plaintiffs") do not challenge Defendant Dr. Elizabeth Cobbs' ("Defendant") ownership of the copyright to the book, *The Hello Girls: America's First Women Soldiers* (the "Book"). And there is no question that Plaintiffs created and are the sole authors of the *Hello Girls Musical* (the "Musical"). The only legal issue is whether Plaintiffs' Musical infringes the copyright in Defendant's Book.

Even so, in Defendant's Memorandum of Law in Support of Her Rule 12 Motion to Dismiss (Dkt. No. 13) ("Opening Brief"), Defendant has attempted to shoehorn this case into an ownership dispute, so that it can claim Plaintiffs' claims are time-barred. But that does not make sense. Were this Court to find that Plaintiffs' claims were time-barred, it would still be left with the same question before it: does the Musical infringe the Book? Defendant knows this; that's why she included a footnote reserving the right to sue for infringement later in her moving papers.

Nor can Defendant escape this Court's jurisdiction. She has repeatedly conducted business in New York related to her Book and Plaintiffs' Musical, attempted to negotiate a potential license for theater productions in New York, negotiated with parties she knew lived in New York, and threatened legal action intended to disrupt activities within the state of New York. That is more than enough to subject her to jurisdiction in New York and the authority of this Court.

This Court should deny Defendant's Motion to Dismiss.

## II. STATEMENT OF FACTS

In April 2016, two theater artists, Cara Reichel and Peter Mills, submitted a proposal to create a musical to honor and tell the story of the Hello Girls, an underappreciated group of women who served in the United States Military in World War I. *See* Dkt. No. 1 ("Complaint") ¶ 22. Plaintiffs were inspired by the history and these women's fight for equality and recognition, paving

1

the way for future generations. Plaintiffs had been researching the Hello Girls before they submitted these proposals and grant applications. *Id.*

Plaintiffs conducted extensive research for this project. *Id.* ¶ 25. They researched multiple articles, journals, books, Bell Telephone's newsletters that covered the stories of the Hello Girls and even reviewed the diary of Grace Banker (one of the telephone operators who served during World War I as a chief operator of the American Expeditionary Forces in the U.S. Army Signal Corps and led a team of Hello Girls). *Id.*

While researching for their production, Plaintiffs found Defendant's Book, which was published in 2017. *Id.* ¶ 27. They found the book contained additional historical information and used it as a resource for their script. *Id.* ¶ 29. Defendant's book is a historical account—complete with 711 footnotes citing to sources for the historical facts. *Id.* ¶ 30. Plaintiffs reached out to Defendant through her website sometime in 2018. *Id.* ¶ 31. They explained that they were writing a musical about the Hello Girls, mentioned the idea of Defendant attending a performance of the musical and taking part in a "talkback" discussion after the show. *Id.*

Because the Musical is based on historical facts, it naturally includes facts that can be found in historical resources about the Hello Girls. *Id.* ¶ 39. But it also includes creative inventions from Plaintiffs. *Id.* And it incorporates facts from Plaintiffs' review of historical sources when writing the Musical—resources other than Defendant's Book. *Id.*

The Musical opened for preview performances on November 13, 2018 in New York, New York at the 59E59 Theaters. *Id.* ¶ 34. The official opening debut was on December 2, 2018. *Id.* Plaintiffs praised Defendant's work and promoted her Book along with the Musical. *Id.* ¶ 37. The program for this first performance included "For more detailed historic information, we recommend Elizabeth Cobbs' book, The Hello Girls." Defendant came to New York to see the first

production of the Musical in December 2018. *Id.* She was further invited to be a guest at a post-show discussion, where she discussed the real Hello Girls' history as compared to the Musical. *Id.* ¶ 40. Following the production, Defendant praised the Musical and said that she hoped it would get big. *Id.* ¶¶ 41-42, Exhibit 2 at 2, Exhibit 3 at 1, Exhibit 4 at 2.

Plaintiffs continued to stay in touch with Defendant. *See id.* ¶ 42, Exhibits 3 and 4. In November 2019, Plaintiffs gratuitously offered to add an acknowledgment of Defendant's Book to the website and program for the Musical. *Id.* ¶ 45, Exhibit 4 at 1. Defendant suggested using the word "based." *Id.* ¶ 45, Exhibit 4 at 2. But after Plaintiffs clarified that they began work on the Musical before Defendant's Book was published, Defendant stated, "I see your point. 'Inspired' and 'Based' both miss the target slightly" and suggested "[h]ow about, '*With Inspiration From The Hello Girls by Elizabeth Cobbs*'?" *Id.* ¶ 45, Exhibit 4 at 3. She also stated, "This helps get around the implication that the play was inspired <u>by</u> the book--***which it clearly wasn't.*** You got going on before Harvard released it. But, you drew inspiration from the book, which must have filled in some of the gaps in your knowledge . . . ." *Id.* (emphasis in original).

The Parties ultimately decided on "With Inspiration from THE HELLO GIRLS by Elizabeth Cobbs, © 2017. All Rights Reserved" which was memorialized in a simple letter on December 5, 2019. *Id.* ¶¶ 46-47, Exhibit 4 at 4, Exhibit 5. Defendant followed up this letter with an email stating that she "wish[ed] to clarify that if the musical goes into other iterations on film or whatever, I would like to discuss some form of compensation for the rights" but that she was "aware rights are more limited for nonfiction than fiction" and "respect[s] the extraordinary artistry [Cara] and Peter brought to the musical, but . . . also recognize[s] [her] work helped to flesh out the story." *Id.* ¶ 50, Exhibit 3 at 1.

3

Plaintiffs continued to keep in touch with Defendant and participated in several projects and programs raising awareness of the Hello Girls both separately and together. *Id.* ¶ 51, Exhibit 6 at 3. One such instance is Defendant spoke at the National Arts Club in New York, New York on October 22, 2019.[1] At this event Defendant had a discussion with an AT&T executive about the Hello Girls. Both Defendant and Plaintiffs relied on historical information at the AT&T Archives and History Center in creating their own works. The event concluded with a special performance of "Twenty," one of the songs from the Musical, performed by Mr. Mills on piano and an accompanying singer.

Still, despite this amicable relationship between Plaintiffs and Defendant, with no claim of infringement of her Book or ownership in the Musical, as alleged in the Complaint, on November 16, 2024, Plaintiffs, who reside in New York City, notified Defendant that there was a commercial producer "interested in bringing the *Hello Girls* musical to Broadway" in Fall of 2025 potentially in 2026 or 2027. *Id.* ¶ 52, Exhibit 7 at 1. Initially, in an email response to Plaintiffs, Defendant requested only "formal acknowledgement" and nothing else. *Id.* ¶ 54, Exhibit 7 at 1.

In January 2025, Plaintiffs drafted an agreement in which Defendant would acknowledge, among other things, that she had no "ownership or interest in the copyright and/or other intellectual property or interest of any other kind in or to the Musical and undertake not to assert or otherwise bring any claim with respect to the ownership of any element of the Musical." *Id.* ¶ 56, Exhibit 8. In response, on February 20, 2025, Defendant sent an email in which she asserted that the Musical allegedly infringed her Book and stated that "I hope we can arrive at a customary underlying rights

---

[1] *See* The National Arts Club, Elizabeth Cobbs, Author of The Hello Girls: America's First Women Soldiers, in Conversation with AT&T's Marissa Shorenstein (Oct. 22, 2019), https://www.nacnyc.org/default.aspx?p=v35EvtView&ID=3864735&type=0&ssid=323204&qfilter=RSC18343 *See* Declaration of Elissa Tenenbaum at ¶ ¶ 2-3, Exhibit A.

4

arrangement so that I can avoid challenging your production plans." *Id.* ¶ 57, Exhibit 9 at 2-4. Thus, in her correspondence to Plaintiffs residing in New York City, Defendant both requested compensation for alleged infringement and threatened to hinder any future performances, which she knew were likely to take place on Broadway in New York. Defendant then emailed Plaintiffs on March 6, 2025, again stating that she would "pursu[e her] rights" and threatened to contact "all venues that announce intentions to produce your play." *Id.* ¶ 60, Exhibit 10.

Defendant's counsel Jordan Greenberger, an attorney in the New York City office of Firestone Greenberger PLLC, sent a cease-and-desist letter to Mr. Mills and Ms. Reichel at the Gurman Agency LLC, also in New York City. *See id.* ¶ 62, Exhibit 11 at 1-3. The letter alleged that the Musical was a derivative work of Defendant's work and demanded not that Plaintiffs cease distribution, but that they (1) credit Defendant in programs and public, (2) sell her book at all performances that offer merchandise, and (3) pay Defendant a percentage of gross revenues. *See id.* ¶ 62, Exhibit 11 at 2-3. After Plaintiffs' counsel sent a letter responding to Defendant's counsel, *id.* Exhibit 12, Defendant's New York counsel sent another letter again requesting the same terms, including a royalty on any performance. *Id.* ¶ 64, Exhibit 13 at 1-3. The letter then went a step further and threatened to "notify relevant third-parties [sic] of her claims (e.g., those potentially liable for contributory and/or vicarious copyright infringement)." *Id.* ¶ 64, Exhibit 13 at 2-3.

Defendant acknowledges that the Musical is being performed in Syracuse, New York. Opening Brief at 6 n.5. Defendant expressly "reserve[d] all rights and claims in relation thereto." *Id.*

### III. ARGUMENT

This Court has personal jurisdiction over Defendant because of her repeated business contacts with New York state related to both her Book and Plaintiffs' Musical, including repeated attempted royalty negotiations with New York-based Plaintiffs. And because this is a case about

alleged infringement by Plaintiffs of Defendant's Book, not an ownership dispute, the Plaintiffs' claim for declaratory judgment ripened within the three years before the Complaint was filed, this action is not time-barred under the Copyright Act. This Court should deny Defendant's Motion to Dismiss.

### A. Personal Jurisdiction

This Court has personal jurisdiction over Defendant because among other actions, since at least March 2025, she has repeatedly transacted business in the state related to the Musical and attended events regarding both her Book and Plaintiffs' Musical in New York. Defendant—both on her own and through her New York-based attorney—has repeatedly attempted to obtain a royalty from New York-based Plaintiffs and specifically threatened to notify New York-based productions of the Musical in both active and imminent productions. Defendant also came to New York to see the first production of the Musical in December 2018 and was a guest at a post-show discussion, where she discussed the real Hello Girls' history as compared to the Musical and spoke at the National Arts Club in New York, New York on October 22, 2019 related to the Hello Girls.

"A plaintiff facing a Fed.R.Civ.P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction." *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Courts "construe the pleadings and affidavits in plaintiff's favor at this early stage." *Id.*; *see also Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) ("[A]ll factual doubts or disputes are to be resolved in the plaintiff's favor."). In deciding a motion to dismiss a complaint for want of personal jurisdiction, the district court may consider materials outside the pleadings, including affidavits and other written materials. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Bensusan Rest. Corp. v. King*, 937 F.Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997). When the litigation arises under a federal statute that does not contain its own jurisdictional provisions—and the Copyright

6

Act does not—a federal court will apply the personal jurisdiction rules of the forum state. *Jonas*, 116 F. Supp. 3d at 323. In New York, personal jurisdiction is governed by N.Y. C.P.L.R. § 302(a).

Under New York's long-arm statute, a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," so long as the plaintiff's "cause of action aris[es] from" that "transact[ion]." N.Y. C.P.L.R. § 302(a); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2016), *certified question accepted sub nom. Licci v. Lebanese Canadian Bank*, 18 N.Y.3d 952 (2012), *and certified question answered sub nom. Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012). To determine whether their personal jurisdiction may be exercised under section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1142 (2006)).

A defendant need not enter the State of New York to transact business within the state. *Licci*, 673 F.3d at 61. "A single act within New York will, in the proper case, satisfy the requirements of section 302(a)(1). *Id.* at 62; *Deutshe Bank*, 7 N.Y.3d at 72 ("entering our state—whether electronically or otherwise—to negotiate and conclude a substantial transaction is with the embrace of the New York long-arm statute"); *PDK Labs*, 103 F.3d at 1110 (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (1988)) (concluding that "proof of one transaction in New York is sufficient to invoke jurisdiction [under 302(a)(1)] even though the defendant never enter[ed] New York . . . ")). Where, by comparison, a single act may be insufficient, "an ongoing course of conduct or relationship in the state may" satisfy the requirements of section 302(a)(1). *Licci*, 673 F.3d at 62. When assessing personal jurisdiction, courts consider the "totality of the

7

circumstances." *Id.* (quoting *Farkas v. Farkas*, 830 N.Y.S.2d 220, 221 (N.Y. App. Div. 2d Dept. 2007)).

Defendant has had repeated business transactions with Plaintiffs in New York related to the Musical. Since at least February 2025, Defendant alone and through counsel, has sent a number communications to Plaintiffs requesting, among other business terms, a royalty. *See, e.g.*, Complaint ¶¶ 52, 60, 62, 64. Defendant's Motion to Dismiss admits as much, as by her own characterization, she "attempted to negotiate" an agreement with Plaintiffs knowing that they were in New York. Opening Brief at 6. Defendant has also stated that she will notify and pursue any third-party that intends to perform the musical, all of which are in New York state (Syracuse and Broadway in New York City). Complaint ¶¶ 57,60, 62, 64, Exhibits 10, 11, and 13; Opening Brief at 6 n.5; *see also Licci*, 673 F.3d at 61 (personal jurisdiction determined by the contacts with New York state and need not be to the specific federal district within that state). Defendant knew that these actions were likely to subject her to jurisdiction in New York. She specifically hired a New York attorney to attempt to negotiate a royalty before the commencement of this action. Each of these acts is sufficient for personal jurisdiction over the defendant. *Barclays Am./Bus. Credit, Inc. v. Boulware*, 542 N.Y.S.2d 587, 587-88 (1989) (personal jurisdiction based on non-domiciliary defendant's retention of New York attorney to negotiate financing agreement in New York on defendant's behalf); *PDK Labs*, 103 F.3d at 1110-11 (finding personal jurisdiction in declaratory judgment action where action case arose "out of [plaintiff's] desire to protect itself from [defendant's] harassing method of transacting 'business' in New York," and finding that defendant "has purposefully and sufficiently availed himself of the privileges of conducting business in New York so as to reasonably expect to be subject to suit here").

Dating back to her attendance and speaking engagement during the first production of the Musical in 2018, Defendant has had contact with New York related to the Musical. That is enough for personal jurisdiction. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 350-51 (S.D.N.Y. 2019) (finding specific jurisdiction existed over individual foreign defendants where defendants attended conferences in New York to "promot[e] [their cryptocurrency] to United States investors," "the very unregistered security at issue in this litigation . . .").

The cases cited by Defendant are inapt. Defendant primarily relies on *Beacon* and progeny to claim there is no personal jurisdiction over her. Opening Brief at 12-13 (citing *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 759-61, 765 (1983)). In *Beacon*, the Second Circuit relied on the fact that "[t]he present controversy arose as a result of Menzies' 'cease and desist' letter, not her New York commercial activity" to find that there was "no 'articulable nexus,' . . . much less a 'substantial relationship,' . . . between Menzies' shipment of goods into New York and Beacon's cause of action." *Beacon*, 715 F.2d at 765. This is factually distinct from Defendant's acts here. Defendant, first on her own and then through her counsel, repeatedly attempted to negotiate a royalty from Plaintiffs from February 2025 through the filing of this action. Complaint ¶¶ 57, 60, 62, 64. She threatened productions she knew would be taking place in New York if Plaintiffs did not provide the royalty. *Id.* This case does not have merely a single cease-and-desist letter, but instead ongoing royalty discussions— are sufficient for personal jurisdiction. *See Keep on Kicking Music, Inc. v. Universal Music Publ'g Grp.*, No. 23-CV-4400 (JPO), 2024 WL 3675936, at *6 (S.D.N.Y. Aug. 5, 2024) ("New York has an interest in hearing cases in its courts concerning the negotiation of contracts and acceptance of royalty payments through New York agents."); *PDK Labs*, 103 F.3d at 1111 (The court concluded that the defendant's "using [an agent] in New York . . . to advance his interest . . . through soliciting funds and negotiating royalty

agreements" constituted minimum contacts sufficient to support specific personal jurisdiction in New York.).

*Marvel Characters*, *Fort Knox Music*, *Holey Soles*, and *Kiss Nail* all fail on similar grounds. In *Marvel Characters*, the only act alleged supporting jurisdiction over two California residents was sending a section 304 termination notices to a publisher in New York, which was insufficient for jurisdiction in New York. *Marvel Characters, Inc. v. Kirby*. 726 F.3d 119, 128-31 (2d Cir. 2013). In *Fort Knox Music*, the Court found there was insufficient allegations for personal jurisdiction in New York because (1) there was not a proper nexus between the allegations by the plaintiffs and the actions of a third party, Broadcast Music Inc., to confer specific jurisdiction and (2) the cease and desist letters alone could not confer jurisdiction. *See Fort Knox Music, Inc. v. Baptiste*, 139 F. Supp. 2d 505, 510 (S.D.N.Y. 2001). In *Holey Soles*, this Court found there was not specific jurisdiction because "[t]he cease-and-desist letter sent by [defendant] to [plaintiff] was sent from Colorado to Vancouver and did not assert any rights under New York law or allege that any infringement was taking place in New York." *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, 2006 WL 1147963, at *9 (S.D.N.Y. May 1, 2006).

In *Kiss Nail*, a declaratory judgment action for patent infringement, the court found there was insufficient allegations for personal jurisdiction because "Plaintiff has not alleged that Defendant used the sending of any of the cease and desist letters to solicit business, establish a continuing relationship with Bi-Lo or any other entity in New York, or to otherwise advance a goal other than to allege patent infringement." *Kiss Nail Prods., Inc. v. One Two Cosms., LLC*, 2020 WL 2924614, at *6 (E.D.N.Y. Mar. 5, 2020). The fact that the letters were only about infringement, and not soliciting business such as a royalty or license, was an important distinction for the court, as it noted that "where a cease and desist letter, like the December 2018 Letter, has only asserted

10

a patentee's rights and does not otherwise extend an offer of licensing or invite other business dealings, courts in the Second Circuit have interpreted such a letter to be without a 'business objective.'" *Id.* (internal citations omitted).

In each case cited by Defendant, simply sending a cease-and-desist letter and contacts with New York unrelated to the allegations were insufficient to confer specific jurisdiction. But as the court in *Kiss Nail* stated, "activity that 'reaches beyond merely sending a "cease and desist" letter,' and 'intertwin[es] legal threats with solicitation of investments' or other business prospects may constitute the transaction of business under section 302(a)(1)." 2020 WL 2924614, at *5 (citing *PDK Labs*, 103 F.3d at 1109-10). Defendant's actions are more than just sending a cease-and-desist letter to Plaintiffs and pertain to repeated attempted negotiations of a royalty and threats of infringement in New York.

While there is a sufficient basis for this Court to assert personal jurisdiction over Defendant, to the extent that the Court finds there is no personal jurisdiction, Plaintiffs request that this Court transfer this case to the Southern District of California, where Defendant resides, pursuant to 28 U.S.C. § 1404(a). *See Fort Knox Music*, 139 F. Supp. 2d at 511-12 (after finding "real questions exist as to whether this Court can properly exercise jurisdiction over defendant," transferring a case from S.D.N.Y. to W.D. La.). Additionally, "[a]lthough a motion by one of the parties is ordinarily required for transfer, a district court may consider the possibility of transfer *sua sponte,* particularly when the parties have been given an opportunity to be heard prior to transfer." *Id.* at 512. The parties have had the opportunity to address personal jurisdiction in New York and if the Court finds there are insufficient allegations of specific jurisdiction, this case should be transferred to Southern District of California, which has general jurisdiction over Defendant.

11

**B.  Statute of Limitations**

Defendant next argues that Plaintiffs' claim is time-barred. It is not time-barred because this case is about infringement, not ownership. The only cause of action in Plaintiffs' Complaint is a request for Declaratory Judgment of Non-Infringement of Copyright. Neither party has ever claimed to own the other party's work. Instead, Defendant has threatened to sue Plaintiffs alleging that the Musical infringes the Book, and Plaintiffs seek a declaration finding that they did not. That is an infringement claim, and it accrues at the time of any individual act of alleged infringement or when a cause of action for declaratory judgment becomes ripe. *See, e.g.*, *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014); *Philogene v. Duckett*, 2018 WL 3946447, at \*5 (S.D.N.Y. Aug. 16, 2018); *McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 257 (S.D.N.Y. 2005).

The Copyright Act has a three-year statute of limitations. 17 U.S.C. § 507 ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). A claim accrues under the Copyright Act is "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996). But ownership and infringement claims accrue at different times. A copyright ownership claim "accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 118 (2d Cir. 2018) (quoting *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011)). By contrast, infringement claims accrue each time a work is allegedly infringed. As long as an act of infringement occurred within the three years before the complaint was filed, the suit is timely. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 368 (2024).

Ownership claims under the Copyright Act are ones that are about the possession of the copyright itself. *Walker v. Carter*, 210 F. Supp. 3d 487, 507 (S.D.N.Y. 2016). That is, an ownership

12

claim implicates 17 U.S.C. § 201 or its related provisions. *See, e.g.*, *Sadiant, Inc. v. Penstock Consulting, LLC*, 2024 WL 2847195, at *1 (S.D.N.Y. May 30, 2024); *see also* 1 Nimmer on Copyright § 5.01 (discussing the statutory provisions and noting "the person claiming copyright must either himself be the author, or he must have succeeded to the rights of the author"). By contrast, infringement claims are ones that relate to the rights to use and exploit a copyright found in 17 U.S.C. § 106. *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010); *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 338, 347 (S.D.N.Y. 2013).

Under the test put forth in *Walker*, and consistent with the actions of both Plaintiffs and Defendant's statements prior to the filing of this action, Plaintiffs' claim against Defendant is for non-infringement, not ownership. Therefore, Plaintiffs need only show that acts by Defendant actions gave rise to a non-infringement dispute within the past three years, which the Complaint adequately alleges. And even if the Court finds this is an ownership dispute, it is Defendant, not Plaintiffs, that would be time-barred, as Plaintiffs were unaware of any alleged ownership dispute. If Defendant believes there is a dispute over ownership, she should have raised it within three years of seeing the Musical in 2018. Finally, statute of limitations arguments such as this are typically inappropriate for a motion to dismiss, as they require a fact-intensive inquiry.

1. **Under The *Walker* Test, Plaintiffs' Claims Are for Non-Infringement, Not Ownership**

Under the test established in *Walker*, 210 F. Supp. 3d at 505, Plaintiffs' claim is about infringement, not ownership. That test has four factors for courts to consider to distinguish between ownership and infringement claims:

> [1] whether the plaintiff concedes in any filings that questions of ownership and authorship are "at the heart" of the claim; [2] whether the plaintiff's copyright ownership is conceded by the defendant; [3] whether the plaintiff alleges anything specific about the means of infringement; and [4] whether "the lawsuit is between two parties who claim ownership of the copyrights."

13

*Id.* (internal citations omitted). Here, not only do the allegations and declaratory claim for noninfringement in Plaintiffs' Complaint make clear that this action should sound in non-infringement and not ownership, but Defendant's own Opening Brief shows that this claim is for noninfringement. In fact, none of the four *Walker* factors point to an ownership dispute.

*First*, under factor 1, Plaintiffs brought an action for declaratory judgment on noninfringement and not ownership. Plaintiffs have never acted as if or otherwise indicated that Defendant had an ownership interest in their Musical, as Defendant cannot point to a single statement or act by Plaintiffs that indicates they believed she was an author of the Musical within 17 U.S.C. § 201, let alone "concede[d] in any filings that questions of ownership and authorship are 'at the heart' of the claim." *Walker*, 210 F. Supp. 3d at 505 (quoting *Barksdale v. Robinson*, 211 F.R.D. 240, 246 (S.D.N.Y. 2002)). And Plaintiffs do not challenge the validity of Defendant's copyright in her Book, only its scope. This factor thus points to an infringement dispute.

*Second*, factor 2 asks if Defendant has conceded that Plaintiffs own a copyright. Here, both parties have conceded, either explicitly or tacitly, that the other owns a copyright. Defendant did that after seeing the Musical for the first time, when she wrote to Plaintiffs "This helps get around the implication that the play was inspired <u>by</u> the book--***which it clearly wasn't.***" Complaint ¶ 45 (emphasis in original), Exhibit 4 at 3. Defendant has thus already admitted that Plaintiffs' Musical meets the originality requirements for copyright protection. 1 Nimmer on Copyright § 2.01[A][1] (2025) ("Originality in the copyright sense means only that the work owes its origin to the author, i.e., is independently created rather than copied from other works") (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)). Defendant's correspondence also claims that the Musical is a derivative work of her Book. *See* Complaint, Exhibit 11 at 2-3. In her briefing, she also alleges that it is a derivative work. *See* Opening Brief at 4, 21-22. A derivative work—whether

14

authorized or not—does not and cannot create an ownership interest in that derivative work (the Musical); Defendant's ownership interest remains solely with her Book. *See MCA, Inc. v. Wilson*, 425 F. Supp. 443, 455 (S.D.N.Y. 1976) (owner of underlying work obtains no property rights in derivative work), *aff'd and modified*, 677 F.2d 180 (2d Cir. 1981).

*Third*, Defendant's claims about the "means of infringement" support Plaintiffs' position under factor 3. Defendant's claims are that Plaintiffs borrowed from her earlier work, the Book, and thus violated her right to produce derivative works or unlawfully copied material from her works. *See, e.g.*, Opening Brief at 21 n.11; Complaint at ¶ 62, Exhibit 11 at 2-3 (letter from Defendant's counsel alleging that The Musical was a derivative work of her Book and demanding, among other actions, that Plaintiffs pay Defendant a percentage of gross revenues). In other words, she has claimed that Plaintiffs violated her right to produce derivative works or unlawfully copied material from her works. *See* Opening Brief at 21 n.11. Those are two of the core rights protected by 17 U.S.C. § 106 for which the remedy is liability for *infringement. See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ("The fundamental copyright principles are clear. The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work."); *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 191-203 (S.D.N.Y. 2016) (discussing liability and remedies for copyright infringement); *see also Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 338, 347 (S.D.N.Y. 2013); *Philogene v. Duckett*, 2018 WL 3946447, at *5 (S.D.N.Y. Aug. 16, 2018).

*Fourth*, under the final *Walker* factor, this is not a suit between two parties who each claim ownership of the same copyright. Defendant has not claimed that Plaintiff has tried to claim rights in the Book and Defendant has never tried to exploit the Musical as a co-owner. Nowhere does she

15

claim that she personally authored portions of the Musical or otherwise fits a category of an "owner," but instead she asserts that Plaintiffs copied protectable elements and thus infringe her work as an unauthorized derivative work. Such a claim sounds in infringement, not ownership. *See Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 542-43 (S.D.N.Y. 2015) (explaining that "[i]n copyright ownership cases, the lawsuit is between two parties who claim ownership of the copyrights . . . , and one party's claim of infringement is entirely a function of whether the other party is the sole owner of the disputed copyrights"); *cf. PK Music Performance, Inc.* v. *Timberlake*, 2018 WL 4759737, at *6 (S.D.N.Y. Sept. 30, 2018) (stating that "it makes little sense to construe Plaintiff's infringement claim against Defendants as an ownership claim when none of the parties assert that Defendants have any ownership rights in" the underlying work).

Even cases cited by Defendant support this conclusion. Defendant cites *Gilliam* for the proposition that "[s]ince the copyright in the underlying script survives intact despite the incorporation of that work into a derivative work, one who uses the script, even with the permission of the proprietor of the derivative work, *may infringe* the underlying copyright." Opening Brief at 22 (citing *Gilliam v. Am. Broad. Cos., Inc.*, 538 F.2d 14, 20 (2d Cir. 1976)) (emphasis added). Not only was *Gilliam* an infringement suit related to an alleged derivative work, but the court acknowledged the separate and distinct copyright ownership between the derivative recorded work and the underlying script. *See Gilliam*, 538 F.2d at 19-20. Similarly, in *Davis*, the issue was whether a television script *infringed* a play on which a screenplay was based, not whether the author and owner of the play also had an ownership interest in the television script. *Davis v. E. I. DuPont deNemours & Co.*, 240 F. Supp. 612, 621 (S.D.N.Y. 1965).

Defendant has proffered no facts showing that she is a joint author, and thus joint owner of the Musical's copyright, and Plaintiffs certainly did not intend to merge—and in fact have not

16

used—her copyrightable elements into their work. *See Weissmann v. Freeman*, 868 F.2d 1313, 1317-19 (2d Cir. 1989).[2] On ownership of a derivative work, it is "contribution" that "would be integrated as an 'inseparable' or 'interdependent' part of a 'unitary whole.'" *Id.* at 1318 (quoting *Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law:* 1965 Revision Bill, 89th Cong., 1st Sess., Copyright Law Revision Part 6, at 65 (House Comm. Print 1965), *reprinted in* 1 Copyright Law Revision (1964–1965)). There is no, and cannot be, any evidence that Defendant contributed to the authorship of the Musical.

If Defendant believes that Plaintiffs violated her rights under 17 U.S.C. § 106, including by creation of an unauthorized derivative work, her remedy is to sue for infringement under 17 U.S.C. § 501. *See Beastie Boys*, 983 F. Supp. 2d at 357 (noting that the remedy for unauthorized use of a work is to sue for infringement). By that same token, if Defendant were to stage a performance of Plaintiffs' Musical or any other acts under 17 U.S.C. § 106, because she is not a joint author, Plaintiffs would be entitled to bring a suit for infringement. *Weissmann*, 868 F.2d at 1318-19. She therefore cannot be a co-owner of Plaintiffs' Musical. *Id. a*t 1318 ("[A]n action for infringement between joint owners will not lie because an individual cannot infringe his own copyright.").

---

[2] *Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir. 1989) is illustrative of the relationship between ownership and rights in a derivative work. In *Weissmann*, the plaintiff and defendant co-authored, and thus co-owned an underlying work, which the plaintiff then expanded upon to create a derivative work. *Id.* at 1316. The plaintiff attempted to assert that defendant had infringed her rights by exploiting the derivative work without her permission. *Id.* The district court found that the defendant was a joint author of the derivative work and therefore could not infringe the work. *Id.* In reversing, the Second Circuit found that the defendant was not a joint author or co-owner, of the derivative work because (1) "he had not participated in drafting the new matter included in" the derivative work, and (2) there was no intention by the plaintiff to merge her new, independent work with the defendant for the derivative work, only for the underlying work. *Id.* at 1318-1319.

Finally, Defendant's position does not truly make sense. Were the Court to find that Plaintiff's claims were time-barred, then it would also necessarily be forced to find that any claims brought by Defendant were time-barred. Defendant is aware of this problem and includes a footnote in her motion suggesting that Defendant would have alternative grounds for a suit—infringement based on a recent performance of the Musical. *See* Opening Brief at 6 n.5. But that is just the mirror image of the claims that Plaintiffs have actually brought here. If the Court were to adopt Defendant's position, it would turn every derivative work case into an ownership dispute. And it was the threat from Defendant to bring an infringement suit that made this lawsuit ripe, which shows that the heart of this case is infringement, not ownership. *McGraw-Hill*, 375 F. Supp. 2d at 257 ("[D]efendant's motion to dismiss the trademark and copyright claims . . . on grounds of lack of ripeness is likewise denied. . . . [I]t is abundantly clear that the two parties are on a collision course that has already framed the essential disputes in plain terms and that will enable the Court to determine their respective rights in the Premium service.").

Because this case turns on questions of infringement, not ownership, the statute of limitations runs from when Plaintiff's claim for declaratory judgment ripened, not the original discussions over the Musical, and it is not time-barred.

### 2. Even if this Were an Ownership Claim, Plaintiffs' Claims Would Not Be Time-Barred.

Until her Motion to Dismiss, Defendant had never claimed that she owned a copyright in the Musical. Instead, beginning in 2025, after Plaintiffs first let Defendant know that there was a chance that *The Hello Girls Musical* could get a "first-rate" production, Defendant has claimed that the Musical infringes her Book and that she is entitled to a royalty based on that alleged infringement. *See, e.g.*, Complaint ¶¶ 57, 60, 62, 64. These are the actions of a copyright owner seeking compensation for an alleged unauthorized derivative work, not that of a co-owner. Indeed,

18

if she now believes that this is a dispute over co-ownership, it is her claim that would be time-barred, as Ms. Reichel and Mr. Mills's joint ownership of the Musical has never been contested by Defendant despite years of knowledge about the Musical, including attending the Musical in 2018.

Defendant points to two instances to claim that Plaintiffs knew of her alleged copyright ownership in the musical on December 12, 2019: (1) a statement in the 2019 letter that provides that programs and the website should include "With Inspiration from THE HELLO GIRLS by Elizabeth Cobbs, © 2017. All Rights Reserved;" and (2) Defendant's a statement in an email that "if the musical goes into other iterations on film or whatever, [she] would like to discuss some form of compensation for the rights." *See* Complaint, Exhibit 3, Exhibit 5; Opening Brief at 18. Neither of these is sufficient to establish—nor even suggest—that she is the co-owner of a copyright the Musical, let alone that she has ever claimed an ownership interest in the Musical. *Wilson*, 892 F.3d at 118.

As for the 2019 letter (Complaint ¶ 45, Exhibit 4), contrary to Defendant's assertion, this letter was simply a gratuitous statement by the parties to include "With Inspiration from THE HELLO GIRLS by Elizabeth Cobbs" on programs and the Musical's website. There was no consideration provided and no binding, enforceable agreement to perform. Moreover, the phrase "With Inspiration from" does not indicate that the Musical is a derivative work, let alone that Defendant was a co-owner of the Musical. It does not follow that, simply by being "inspir[ed]" by another work, the person necessarily infringed that work and does not mean that Defendant was a co-author of the work, as nowhere in the record is Defendant shown to be an author.[3] Indeed,

---

[3] Even if the 2019 Letter could be viewed as a license—which it is not—a non-exclusive license cannot create an ownership dispute where none exists. *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) ("A non-exclusive license conveys no ownership interest . . . ."). As the Declaratory Judgment Complaint alleges and the parties' correspondence illustrates, this case turns on the "nature, extent or scope, of copying . . . ." *Kwan*, 634 F.3d at 229. *Kwan* concerned whether

Defendant's assertion that this is evidence of co-ownership is belied by her own statements at the time Plaintiffs gratuitously agreed to the "With Inspiration from" language, as she stated, "This helps get around the implication that the play was inspired <u>by</u> the book--***which it clearly wasn't,***" and acknowledging that the Plaintiffs began working on the Musical well before they met Defendant's or book was published. *See* Complaint ¶ 45 (emphasis in original), Exhibit 4 at 3.

Similarly, as to Defendant's email, the full statement provides:

> I do wish to clarify that if the musical goes into other iterations on film or whatever, I would like to discuss some form of compensation for the rights. I'm aware rights are more limited for nonfiction than fiction, and I respect the extraordinary artistry you and Peter brought to the musical, but I also recognize my work helped to flesh out the story.

Exhibit 3. At best, Defendant merely expressed a desire for compensation in the future due to her belief that Plaintiffs used her *nonfiction* work (fiction versus nonfiction is considered in *infringement* actions) as one of the sources for their Musical or, at worst, she threatened to sue for future infringements. Yet nowhere does Defendant allege that she is an author or otherwise an owner of the Musical's copyright. Plaintiffs could not have brought a declaratory action for ownership then because she did not state that she was an owner of the Musical, nor had she made any references to enforcing any asserted ownership rights, so the claims would not have been ripe.

Even assuming that Defendant's claim is that she is a co-owner of the Musical is viable, Plaintiffs' claim would not be time-barred because the first time Plaintiffs received any notice of an ownership claim by Defendant was in the Motion to Dismiss. Before that, Defendant had never

---

Kwan's editorial contributions to a work were significant enough to qualify her as the author, and therefore owner, of the copyright. There was no copying involved in *Kwan*. Rather, it was two authors working on the same work. The facts here are opposite, Defendant did not work on the Musical nor was there any co-authorship between Plaintiffs and Defendant. These are separate works by separate authors. Defendant's complaints to Plaintiffs revolved around the amount she believed was copied from her Book and resources—the nature of an infringement claim.

20

asserted ownership in the copyright of the Musical. Instead, starting in 2025 she has claimed that portions of the Musical *infringe* the Book, and therefore she was entitled to a royalty. *See, e.g.*, Complaint ¶¶ 57, 60, 62, 64.

Plaintiffs also could not have brought an infringement claim back in 2019 because there was nothing to premise a claim upon. Before 2025, Defendant had never asserted that the Musical was a derivative of her Book or demanded a royalty, much threatened to bring an infringement action. Indeed, as Defendant acknowledges in Footnote 10, if Plaintiffs had attempted to bring a declaratory action, it could have been barred as unripe. Opening Brief at 21. In contrast, starting in 2025, Defendant began actively threatening to approach producers on Broadway if Plaintiffs did not pay her a royalty. Complaint ¶ 64, Exhibit 13 at 2-3. Defendant also acknowledges that there is a production in Syracuse, New York that began in September 2025, as to which she reserved "all rights and claims." *See* Opening Brief at 6 n.5. Far from being a "speculative possibility," Defendant is attempting to interfere with Plaintiffs' rights now. *See, e.g.*, *McGraw-Hill*, 375 F. Supp. 2d at 257.

Instead, under Defendant's theory, it is Defendant who would be time-barred because, if she believed she had an ownership interest in 2019, it was her duty to pursue that interest diligently after seeing the Musical in 2018. *See Kwan*, 634 F.3d at 229 (finding plaintiff's claims were time-barred because she was aware of the publication of a work she allegedly authored, but waited over three years to pursue her claim). Because she did not file a claim or otherwise put Plaintiffs on notice, she cannot now assert ownership of the Musical's copyright or attempt to dismiss the case under this theory and then later sue for infringement. *See Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016); *Kwan*, 634 F.3d at 229.

21

The ownership-specific cases cited by Defendant show that not only are Plaintiffs' claims not time-barred, but that Defendant's claims would be should she assert an ownership interest in the Musical. Each of Defendant's cases includes a distinct, unambiguous act that put the party challenging ownership on notice. *Vasquez v. Torres-Negron* pertained to an alleged non-owner wrongfully registering a copyright and another copyright owner seeking to cancel the registration. 2007 WL 2244784, at *9 (S.D.N.Y. July 11, 2007). Registration was found to be the wrongful act in that case that began the three-year statute of limitations and because there is no registration or any similar acts for the Musical, *Vasquez* does not apply. *Aday v. Sony Music Ent., Inc.* involved an allegedly invalid work-for-hire assignment of a copyright. 1997 WL 598410, at *4-5 (S.D.N.Y. Sept. 25, 1997). The court held that the contractual provision regarding work made for hire triggered the three-year statute of limitations because it put the plaintiff on notice of any problems with that provision. *Id.* Defendant does not allege or point to any facts supporting that the Musical was a work made for hire or that Plaintiffs transferred any portions of their rights in the Musical. Thus, *Aday* is inapplicable. In *Barksdale*, counsel for the parties sent competing letters that "unambiguously asserted" their respective client was the owner of the copyright. 211 F.R.D. at 244. The court held that these unambiguous declarations of ownership triggered the statute limitations, and the claims were time-barred. *Id.* at 245. Defendant purported evidence of declaring her ownership from 2019 is a far cry from the acts in *Barksdale*. Indeed, if anything, *Barksdale* further demonstrates that Defendant's claim is time-barred, as she was on notice in December 2018 if she thought she had an alleged co-ownership interest but never pursued it.

Finally, although Defendant cites to the Sixth's Circuit's *Everly v. Everly*, 958 F.3d 442, 451 (6th Cir. 2020) for the concept of "repudiation," the Second Circuit's *Wilson*, cited by *Everly*, describes "at least three types of events that can put a potential plaintiff on notice and thereby

22

trigger the accrual of an ownership claim: public repudiation; private repudiation in communications between the parties; and implicit repudiation by conspicuously exploiting the copyright without paying royalties." *Wilson*, 892 F.3d at 118 (cleaned up). In *Wilson*, the court found that even the "act of registering an adverse claim in the Copyright Office was not an effective repudiation." *Id.* at 119. Defendant has taken no overt act to repudiate the ownership of the Musical for the simple fact that she cannot, as she is not an owner.[4] Because this case pertains to infringement, and not ownership, and relates to acts starting in 2025, Plaintiffs' claims are not time-barred. *Warner*, 601 U.S. at 368.

### 3.  Defendant's Time-Bar Argument Cannot be Resolved on a Motion to Dismiss

Defendant's Motion to Dismiss should also be denied because under these circumstances the inquiry into the statute of limitations is too fact-dependent to be resolved under Rule 12. While statute of limitations can be raised on a motion to dismiss, "because a statute of limitations defense can be highly fact dependent, '[a] motion to dismiss' is often not the appropriate stage to raise affirmative defenses like statute of limitations.'" *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016) (alteration in original) (quoting *Ortiz v. City of New York*, 755 F.Supp.2d 399, 401 (E.D.N.Y.2010)) (denying motion to dismiss because issue determinative of statute of limitations issue could not be resolved based on allegations in complaint). Accordingly, "[d]ismissal for failure to state a claim based on a statute of limitations is appropriate only if a complaint shows clearly that a claim is not timely." *Robert Smalls Inc. v. Hamilton*, No.

---

[4] If Defendant's allegations are not for ownership generally, but instead specifically for authorship, the "authorship claim[] 'accrue[s] when plain and express repudiation of [authorship] is communicated to the claimant, and are barred three years from the time of repudiation.'" *Horror Inc. v. Miller*, 15 F.4th 232, 257 (2d Cir. 2021) (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)). Dr. Cobbs has made no "express repudiation" of Plaintiffs authorship, let alone indicated any facts to demonstrate she is an author. *Id.* at 257-59 (finding no express repudiation even after the plaintiff registered itself, not defendant, as the author and identifying it as a work for hire).

09 CIV. 7171 DAB JLC, 2010 WL 3238955, at *9 (S.D.N.Y. July 19, 2010) (internal citation omitted). When considering a motion to dismiss on the basis of untimeliness, a "[c]ourt may not look outside the complaint and 'any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits.'" *Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 566 (S.D.N.Y. 2007) (quoting *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)). This action is an infringement action—not an ownership dispute. Plaintiffs have adequately pled that the acts leading to the need for the instant non-infringement action occurred within the preceding three years or were imminently likely to occur.

Were this Court to grant Defendant's motion, she would still not automatically become an owner. Defendant has alleged no facts demonstrating that she is an owner in the Musical under 17 U.S.C. § 201 or by any other operation of law. That means that even if this Court finds that this is an ownership dispute, and Plaintiffs were on notice of that ownership dispute more than three years ago, the only result is dismissal of the case. To resolve any of these issues, this Court would still also have to find separately that Defendant was *in fact* an owner of the Musical, which it cannot do at this procedural phase, nor ever, because, under Defendant's own arguments, she would be time-barred as well.

By attempting to turn what is a clear infringement dispute into an ownership dispute, Defendant is needlessly muddying the waters of what should otherwise be a straightforward case. This is an infringement dispute about whether Plaintiffs' Musical took protectable elements of Defendant's Book. That question can be settled for certain through this action. By trying to frame this as an ownership dispute, Defendant would leave that question unresolved, or even worse, exploit a backdoor to demand undeserved royalties.

24

**4. To the Extent that the Court Finds this Action Pertains to Ownership and Not Infringement, Plaintiffs Should Be Granted Leave to Amend.**

Plaintiffs brought this suit as a declaratory non-infringement claim because, based on Defendant's statements, they are under imminent threat of an infringement action from Dr. Cobb and that she could threaten future productions of the Musical. Despite the statements in her Opening Brief, all of her actions to date have related to infringement, not ownership. Still, to the extent that the Court finds this is an ownership action—which Plaintiffs learned about for the first time in her briefing—Plaintiffs seek leave to amend their Complaint. In acknowledgement of Rule 5.I of this Court's Individual Rules and Practices in Civil Cases, Plaintiffs believe they have adequately supported their claim for infringement and adequately support personal jurisdiction. If, however, the Court disagrees with Plaintiffs' assertion that this in infringement matter, and instead rules this is an ownership dispute, Plaintiffs respectfully request leave to amend their Complaint to support a ripe and timely ownership claim.

## IV. CONCLUSION

Plaintiffs have adequately pleaded both that this Court has personal jurisdiction over the Defendant and that this action is not time-barred, and Defendant's motion to dismiss should be denied. To the extent that the Court finds there is no personal jurisdiction over the Defendant, Plaintiffs request that this Action be transferred. If the Court finds that this is an ownership dispute, Plaintiffs request leave to amend.

Dated: November 7, 2025

Respectfully submitted,

CROWELL & MORING LLP

 /s/ *Preetha Chakrabarti*
Preetha Chakrabarti
Glen G. McGorty
Two Manhattan West,
375 Ninth Ave.
New York, NY 10001
(212) 223-4000
PChakrabarti@crowell.com
GMcGorty@crowell.com

Joachim B. Steinberg
CROWELL & MORING LLP
Three Embarcadero Ctr, 26th Floor
San Francisco, CA 94111
(415) 986-2800
JSteinberg@crowell.com

Elissa N. Tenenbaum
CROWELL & MORING LLP
455 N Cityfront Plaza Dr, Suite 3600
Chicago, IL 60611
(312) 321-4200
ETenenbaum@crowell.com

*Attorneys for Plaintiffs*

26

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8,613 words.