UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARA REICHEL and PETER MILLS,<br><br>                                    Plaintiffs,<br><br>            v.<br><br>ELIZABETH COBBS,<br><br>                                    Defendant. | Index No. 1:25-cv-06626<br><br><br>**DEFENDANT'S REPLY BRIEF** |

Dr. Cobbs respectfully submits this reply brief in further support of her Fed. R. Civ. P. 12(b)(2) and (b)(6) motion to dismiss for lack of personal jurisdiction and for failure to state a claim based upon copyright law's three-year statute of limitations.  For the reasons stated in Dr. Cobbs' moving papers and below, the Court should grant the motion and dismiss the case.

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER DR. COBBS

Dr. Cobbs' moving papers demonstrated that the Court should dismiss this case for lack of personal jurisdiction because there is no: (1) general jurisdiction over Dr. Cobbs, who is a California resident; or (2) specific jurisdiction over her, as confirmed by *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757 (1983) and its progeny involving the sending of cease and desist letters in intellectual property cases.[1]  Plaintiffs' opposition papers do not argue that the Court has general jurisdiction over Dr. Cobbs, and therefore Plaintiffs have abandoned any such argument that general jurisdiction exists.  *Arzu v. Am. Airlines, Inc.*, 690 F. Supp. 3d 242, 249 (S.D.N.Y. 2023) ("Because Plaintiff does not dispute Defendant's arguments against general jurisdiction, the Court deems Plaintiffs to have abandoned the assertion of general personal jurisdiction over Defendant.")

---

[1] *See also*, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128-31 (2013); *Fort Knox Music, Inc. v. Baptiste*, 139 F.Supp.2d 505 (S.D.N.Y. 2001); *Kiss Nail Products, Inc. v. One Two Cosmetics, LLC*; 2020 WL 2924614 (S.D.N.Y. March 5, 2020); and *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, 2006 WL 1147963 (S.D.N.Y. May 1, 2006).

1

Instead, Plaintiffs argue that there is long-arm jurisdiction over Dr. Cobbs due to her alleged contacts with New York relating to the Book and Musical.  However, as explained in the moving papers and further discussed below, there is no long-arm jurisdiction over Dr. Cobbs because: (a) the parties' 2025 negotiations concerned federal law and were location agnostic; and (b) her earlier visits to New York in relation to the Book and/or Musical do not provide a sufficient nexus to the claims.

**A.    The 2025 Negotiations Concerned Federal Law & Were Location Agnostic**

Dr. Cobbs has not "since at least March 2025 … repeatedly transacted business in the state related to the Musical…". Opp. Br. [Doc. 26], p. 6.  Dr. Cobbs' only visit to New York in 2025 was to fly through JFK Airport for a trip to visit family in New Jersey.  Cobbs Decl., ¶ 9. And her response to Plaintiffs' proposal to give up her rights in the Musical for $1.00: (1) was location agnostic; and (2) concerned federal copyright law.

1.    The Negotiations Concerned Federal Copyright Law, Not New York Law

In *Marvel Characters*, the Second Circuit found that it was perhaps "most important" that the issues arose under federal copyright law rather than New York law.  726 F.3d at 130.  The same is true here.  An underlying rights agreement for a musical implicates federal copyright law.  The parties' discussions likewise were focused on federal copyright law, not any New York state law specific issues.  The negotiations in 2025 leading to the commencement of this federal lawsuit concerned federal copyright law, not any state-specific law.

2.    The Negotiations Concerned The Scope Of The Productions, Not Their Location

The parties' 2025 negotiations were also location agnostic.  From Dr. Cobbs' perspective, the negotiations were occurring because Plaintiffs desired to exploit the Musical beyond small, non-profit productions and into larger, for-profit productions – in *any location*, not solely New York.  Whether for productions on Broadway or in any other state or country (e.g., the West End

in London), it was the type of production that was the issue – not the location of the production.

Dr. Cobbs was not specifically targeting New York, even if ultimately an underlying rights

agreement might concern productions in New York and even if Plaintiffs happened to be New

York residents (albeit, represented in the negotiations by a California attorney).  Whether in New

York or any other location, the negotiations concerned exploitations of the Musical beyond

small, non-profit productions.

Likewise, any communications that Dr. Cobbs might have contemplated having with

third parties involving exploitations of the Musical (e.g., theaters) were similarly location

agnostic.  It would not have mattered if a theater were in New York or Ohio; what mattered was

whether Plaintiffs were going to produce a small, non-profit production or a larger, for-profit

production, for which the plaintiffs would need to enter into a new agreement with Dr. Cobbs.

Plaintiffs argue that Dr. Cobbs said she would pursue third parties "all of which are in New York

state." Opp. Br., p. 8.  But Dr. Cobbs did not know the location of those unspecified third

parties; Plaintiffs never specifically identified to Dr. Cobbs any forthcoming productions, let

alone when and where they would be.

Inasmuch as Plaintiffs did produce the Musical in 2025 in Syracuse, New York, as stated

in footnote 5 of the moving brief, Dr. Cobbs was not aware of that production until *after* this

lawsuit was commenced.[2]  Additionally, it appears that Plaintiffs' first performed the Musical in

---

[2] Plaintiffs' preliminary statement paraphrases Dr. Cobbs' moving footnote 5 as "reserving the right to sue for infringement," and their statement of "facts" describe Dr. Cobbs' attorney's pre-action letters as cease-and-desist letters. Opp. Br., pp. 1, 5. But Dr. Cobbs' opening footnote 5 does not actually include the word "infringement" and her lawyer's letters are not cease and desist letters.  Nor do the footnote or pre-action letters identify against whom Dr. Cobbs might assert a claim.  A direct infringement claim could be against a third party (not the author of the derivative work) who in exploiting the Musical thereby also exploits Dr. Cobbs' work; absent Dr. Cobbs' permission (e.g., in an underlying rights agreement), Plaintiffs may not license to third parties those protectible parts of the Book that appear in the Musical. *Gilliam v. Am. Broad.*

3

Syracuse on September 9, 2025, which is almost a month *after* they commenced this action on

August 12, 2025 [Doc. 1].  *See* https://www.syracusestage.org/hello [last visited Nov. 13, 2025]:



An event that occurred after commencement of the action cannot serve as a basis to assert

personal jurisdiction.  Personal jurisdiction must be ascertained as of the date this action was

commenced.  *Arthur v. Orchestrate Bus. LLC*, No. 24-CV-02985 (MMG), 2025 WL 2201067, at

*6, n. 3 (S.D.N.Y. Aug. 1, 2025).

Plaintiffs may have expressed a hope to bring the Musical to New York City's Broadway

in the future, but no specifics about a New York production were provided (e.g., date, location).

Further, the Court can take judicial notice (Fed. R. Evid. 201) that it is a long road to Broadway –

a road that frequently involves first producing a show on smaller stages in other regions.

Plaintiffs recognized as much in their November 2024 email to Dr. Cobbs: "…there is a

---

*Companies, Inc.*, 538 F.2d 14, 20 (2d Cir. 1976) ("Since the copyright in the underlying script
survives intact despite the incorporation of that work into a derivative work, one who uses the
script, even with the permission of the proprietor of the derivative work, may infringe the
underlying copyright."); *Davis v. E. I. DuPont deNemours & Co.*, 240 F.Supp. 612, 621
(S.D.N.Y.1965) (defendants held to have infringed when they obtained permission to use a
screenplay in preparing a television script but did not obtain permission of the author of the play
upon which the screenplay was based).  *Gilliam* may have been an infringement case, but the
claims were made against third parties not the direct derivative works owner.

commercial producer who is interested in bringing the Hello Girls musical to Broadway (<u>with some further development planned</u>). We know that this is likely <u>a journey over the next few years</u> -- but hopefully by 2025 fall there will be some concrete plans for a new production (a non-actor-musician version of the show) that will have a <u>path in place to come back to NYC at a Broadway level, maybe in the 26-27 theater season</u>."  Compl., Ex. 7 (emphasis added).

There is also no factual support for any argument that Dr. Cobbs would be accepting royalties through a New York agent, as suggested by Plaintiffs' citation to *Keep on Kicking Music v. Universal music Publ'g Grp.*, 2024 WL 3675936, *6 (S.D.N.Y. Aug 5, 2024).  There was never any discussion about where royalties would be paid (Plaintiffs rejected paying any royalties whatsoever to Dr. Cobbs), and as a California resident it is just as likely that Dr. Cobbs would have collected royalties in California – though discussions never got that far.

Lastly, Dr. Cobbs' moving papers demonstrated that her attorney is admitted in New York and New Jersey, and that he engaged in communications with Plaintiffs' counsel while in New Jersey.  His experience with copyright issues and entertainment industry disputes was relevant to the negotiations, regardless of his physical location or state bar admissions.  Tellingly, Plaintiffs do not dispute that they were represented by a California attorney in the negotiations.

### B.    Dr. Cobbs' Earlier Visits To New York Do Not Have A Sufficient Nexus

Dr. Cobbs' other visits to New York in relation to the Book and/or Musical do not have a sufficient nexus to the claims.  Both her appearance at a December 2018 production of the Musical and her October 2019 book-talk at the National Arts Club *pre-date* the parties' November 2019 emails (Compl., Ex. 4), their December 2019 "With inspiration from" written agreement (*id.*, Ex. 5), and Dr. Cobbs' email about underlying rights (*id.,* Ex. 3; and discussed further in relation to the statute of limitations).  Plaintiffs' statement of "facts" (Opp. Br., pp. 3-4)

suggests that the National Arts Club talk occurred after the parties executed the agreement, but that is inaccurate.

Moreover, Plaintiffs' efforts to have Dr. Cobbs trade her rights for $1.00 arises out of the December 2019 contract and her email the same day she signed the agreement, not out of Dr. Cobbs visiting New York to attend a show in 2018 or to talk about her Book in October 2019. Dr. Cobbs' travels to New York in 2018 to attend a performance have nothing to do with whether Plaintiffs may now produce commercial large-scale productions of the Musical; the purported issue raised by Plaintiffs in 2024-2025 would have arisen regardless of whether Dr. Cobbs had ever travelled to New York in 2018 to view a performance of the Musical or to give a speech about the Book in October 2019. Thus, this case is unlike the case cited by Plaintiffs, *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 350-51 (S.D.N.Y. 2019), which concerned allegations that the defendants sold unregistered securities (cryptocurrency) and promoted those securities in New York. Here, Dr. Cobbs' travels to New York do not have a substantial relationship to the claim asserted; in other words, Plaintiffs' claim does not arise from those limited New York contacts. *Beacon*, 715 F.2d at 765; *Fort Knox Music*, 139 F. Supp. 2d at 510-11; *Holey Soles*, 2006 WL 1147963 at *9.

## C.  Transfer Would Be Futile

Plaintiffs lastly request that the Court transfer the case to the Southern District of California if there is no personal jurisdiction here in New York. If not time-barred, then Dr. Cobbs agrees that the case should be heard in the California district court in which Dr. Cobbs resides; but if time-barred, then transfer would be a futile exercise. *Daniel v. Am. Bd. of Emergency Med*., 428 F.3d 408, 436 (2d Cir. 2005) (If "a peek at the merits," reveals that the case is a sure loser in the court that has jurisdiction in the conventional sense over it, then the

court in which it is initially filed but that does not have jurisdiction should dismiss the case rather than waste the time of another court).

## II.    PLAINTIFFS' CLAIMS ARE TIME-BARRED

Dr. Cobbs' moving papers established that Plaintiffs' claims are time-barred by copyright law's three-year statute of limitations.  17 U.S.C. § 507(b).  Plaintiffs' claim accrued on December 12, 2019, which is the day that both (i) the parties entered into the "With inspiration from…" credit agreement, and (ii) Dr. Cobbs' emailed Plaintiffs that she should receive "compensation for the rights" if exploitations of the Musical went beyond small, non-profit productions.  Complaint, ¶¶ 47-48 and 50, and Exhibits 3 (at p.1) and 5.  The Court need not look outside the four corners of the complaint to make this determination.  *Id.*

Dr. Cobbs had set the stage the month before, when she emailed Plaintiffs with a reference to the musical *Hamilton* and its relationship with a biography about Alexander Hamilton.  Compl., Ex. 4 (at pp. 1-2).

And then on December 12, 2019, Dr. Cobbs' underlying rights were brought to center stage, with a glaring spotlight, when she executed the credit agreement and sent her email about "compensation for the rights."  Complaint, ¶¶ 47-48 and 50, and Exhibits 3 (at p.1) and 5.

Those two events, on the very same day, started the clock for Plaintiffs to bring what is essentially a quiet-title action.  *Cf.*, *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996), as amended (June 14, 1996) ("Copyright, like real estate, lasts a long time, so stability of title has great economic importance.").  But Plaintiffs did not do so within three years.  They waited six years to bring this action.  Allowing Plaintiffs to now challenge Dr. Cobbs' rights, after having had six years to do so, would be contrary to copyright law's goal of providing predictability and certainty in the copyright market concerning ownership.  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 749–50, 109 S. Ct. 2166, 2177–78 (1989) (construing work made for hire

7

provisions in the Copyright Act). "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527, 114 S. Ct. 1023, 1030, 127 L. Ed. 2d 455 (1994). Allowing Plaintiffs to challenge Dr. Cobbs' ownership interest six years after she asserted her rights, and with Dr. Cobbs proceeding as though Plaintiffs agreed that she had such rights, only muddies the waters.

Dr. Cobbs' moving brief, at pp. 20-21, acknowledged that the allegations in the complaint do not fit squarely into either an ownership or infringement dispute, but asserted that this case is at its core an ownership dispute in which Plaintiffs seek judicial confirmation that they are the sole owners of the Musical.[3] Plaintiffs dedicate much of their opposition briefing to arguing that this is an infringement dispute rather than an ownership dispute.

However, Plaintiffs' arguments fail to appreciate that they too viewed this as an ownership issue. Faced with the parties' 2019 agreement, Plaintiffs' January 9, 2025, proposal to Dr. Cobbs asked her to acknowledge and agree, in exchange for $1.00, that:

> 1.   You have no <u>ownership</u> or interest in the copyright and/or other intellectual property or interest of any other kind in or to the Musical and undertake not to assert or otherwise bring any claim with respect to the <u>ownership</u> of any element of the Musical. [Complaint, Ex. 8 (emphasis added).]

---

[3] Dr. Cobbs' ownership extends to those parts of the Musical that include her protectible material from the Book, including the selection, coordination, and arrangement of theories and facts. 17 U.S.C. § 103(b) ("The copyright in a … derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work..."); *Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 145 F.4th 257, 264 (2d Cir. 2025) (the aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work).

It is disingenuous for Plaintiffs to argue that that they "were unaware of any alleged ownership dispute" when it was Plaintiffs who, acknowledging the enforceability and validity of the 2019 agreement (which for litigation purposes they now characterize as gratuitous), started the 2025 negotiations by asking Dr. Cobbs to trade her ownership interests in the Musical for $1.00.  Compl., Ex. 8; Opp. Br., p. 13.

It is likewise disingenuous for Plaintiffs to argue that if Dr. Cobbs "believes there is a dispute over ownership, she should have raised it within three years of seeing the Musical in 2018" (*id.*) … because *she did, in fact, assert her ownership in her December 19, 2019 email*. That email was sent the very same day that *Plaintiffs also acknowledged Dr. Cobbs' ownership interest by executing the "With inspiration from" credit agreement*.  If Plaintiffs wanted to dispute her ownership, then by December 2022 they should have brought an action to rescind the 2019 agreement and challenge Dr. Cobbs' 2019 email, rather than waiting six years to try to reverse course.  *Aday v. Sony Music Ent., Inc.*, No. 96 CIV. 0991 (MGC), 1997 WL 598410, at *5 (S.D.N.Y. Sept. 25, 1997) (musical artist who wanted to challenge work-for-hire provision in 1977 recording contract should have brought action within three years of that contract, rather than waiting 19 years to challenge whether the works were made for hire); *see also*, *Santa-Rosa v. Combo Recs.*, 471 F.3d 224, 227-28 (1st Cir. 2006) (musical artist was present when recordings were made, thereby starting clock for him to bring an action for a judgment declaring co-ownership in recordings).  If Plaintiffs believe that royalties to Dr. Cobbs are "undeserved," then they should not have waited to seek judicial relief for six years after they gave Dr. Cobbs credit for the Musical and received her email about receiving compensation for the rights.  Opp. Br., p. 24.

In any event, whether this case is viewed as an ownership or infringement case is, at least under these circumstances, not determinative of the statute of limitations issue. If deemed an infringement case, Plaintiffs' claim still accrued no later than December 12, 2019. Plaintiffs recognize that a claim accrues under the Copyright Act when a plaintiff "knows or has reason to know of the injury upon which the claim is premised." Opp. Br., p. 12 (quoting *Merchant v. Levy*, 92 F. 3d 51, 56 (2d Cir. 1996)). Their claimed "injury" is that Dr. Cobbs asserts rights in the Musical. She did that in 2019. Plaintiffs undoubtedly knew that she asserted rights in the Musical because the parties' 2019 credit agreement acknowledges Dr. Cobbs' contributions. Plaintiffs' focus on the emails pre-dating the credit agreement in which the parties decided to not use "inspired by" and instead "with inspiration from" is a red-herring; that discussion was a recognition that Plaintiffs started their work on the Musical prior to reading Dr. Cobbs' book and therefore the Book did not inspire them to start working on the Musical. But ultimately, the Book was – in Plaintiffs' own words – a "key source." Compl., Ex. 4 (at 11/11/19 7:06 p.m. email, and 11/13/19 at 10:49 a.m. email). Now that Plaintiffs see the bright lights of Broadway on the distant horizon, they are greedily attempting to cut-out Dr. Cobbs – whose Book was a "key source" and unquestionably inspired the Musical – from sharing in its potential success.

III.   **CONCLUSION**

The complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(2) and 12(b)(6). The Court lacks personal jurisdiction over Dr. Cobbs, and even if it has jurisdiction over her then Plaintiffs' claims are time-barred by copyright law's three-year statute of limitations (thereby also making any transfer of the case to an appropriate district futile). If, however, the Court determines that the claim is not time-barred, then transfer to the district in California where Dr. Cobbs resides is appropriate.

Dated:  November 17, 2025

FIRESTONE GREENBERGER PLLC
*Attorneys for Dr. Cobbs*

___/s/ Jordan Greenberger___
Jordan Greenberger
Callie J. Kramsky
104 West 40th St., 4th Fl.
New York, NY 10018
212-597-2255
jg@firegreenlaw.com
ck@firegreenlaw.com

WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), I hereby certify that, according to the word count function of MSWord, the foregoing brief (excluding the caption, date and signature blocks) contains the following number of words: 3,264.

November 17, 2025

___/s/ Jordan Greenberger___
Jordan Greenberger