UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARA REICHEL, et al., Plaintiffs, -v- ELIZABETH COBBS, Defendant. | 25-CV-06626 (JAV) OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

Plaintiffs Cara Reichel and Peter Mills ("Plaintiffs") bring this action against Dr. Elizabeth Cobbs ("Defendant") for declaratory judgment of noninfringement of copyright. Before the Court is Defendant's motion to dismiss ("the Motion") pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. ECF No. 12. For the reasons that follow, the Motion is **DENIED**.

**BACKGROUND**

The following facts are accepted as true and construed in the light most favorable to Plaintiff for the purposes of the Motion. *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

Plaintiffs are theater artists who staged *The Hello Girls* Musical ("the Musical") in 2018 through their theater company, Prospect Musicals. ECF No. 1 ("Compl."), ¶¶ 6, 23. Both Plaintiffs reside in and are based in New York City. *Id.*, ¶¶ 11-12. Mr. Mills wrote the lyrics and music for *The Hello Girls* Musical, and

both Ms. Reichel and Mr. Mills co-authored *The Hello Girls* Musical libretto. *Id.*, ¶¶ 11-12, 33.

In April 2016, Plaintiffs began researching the history of the Hello Girls, a group of American women who aided the Allied Powers during and following World War I, to create a musical highlighting their contributions. *Id.*, ¶¶ 7, 8. Plaintiffs allege that their research spanned a diverse array of sources, including multiple articles, journals, books, and archives. Compl., ¶¶ 25-26. In 2017, Plaintiffs discovered the book *The Hello Girls: America's First Women Soldiers*, written by Defendant and published on April 6, 2017. *Id.*, ¶¶ 7, 13, 27. Defendant's book is a historical account that includes credit to other sources for the facts she used in her book. *Id.*, ¶ 30. In June 2017, Plaintiffs ordered Defendant's book while continuing their research, which had been underway for over a year, and allege they later incorporated some historical information from the book into the Musical. *Id.*, ¶ 29. Plaintiffs allege that they based the Musical on non-copyrightable historical facts gleaned from various historical works (including Defendant's book and "many other resources") and infused it with their own "creative inventions," taking no more "than a *de minimis* amount of any potentially copyrightable material." *Id.*, ¶¶ 39, 65, 66.

The show officially debuted on December 2, 2018, in New York City at the 59E59 Theaters. *Id.*, ¶ 34. In early December 2018, Defendant came to New York and saw a live production of the Musical, following an invite from Plaintiffs. *Id.*, ¶¶ 31, 40. Defendant also accepted Plaintiffs' invitation to speak as a guest at a

post-show event, where Defendant shared "the real Hello Girls' history as compared to the Musical." *Id.*, ¶ 40. Because Plaintiffs had promised to include an expression of appreciation for Defendant's book, the program included the following text: "[F]or more detailed historic information, we recommend Elizabeth Cobbs' book, The Hello Girls." *Id.*, ¶¶ 8, 37.

In November 2019, the Musical was performed at the Kennedy Center. *Id.*, ¶ 43. Following the broadcast of that performance, Defendant emailed Plaintiffs, in which she expressed that she felt that "more respect is due [her] contribution." *Id.*; ECF No. 1-4 ("Compl., Ex. 4") at 1-2. Defendant noted that "Lin Manuel-Miranda paid Ron Chernow significant royalties for the use of his work—less groundbreaking than [hers]." Compl., Ex. 4 at 1-2. Defendant stated that she would "appreciate at least recognition going forward." *Id.*

In response, Plaintiffs and Defendant collaborated on an acknowledgement of the book that would be included on the Musical's website and program. Compl., ¶¶ 45-46. The parties chose "With Inspiration From *The Hello Girls* by Elizabeth Cobbs" to reflect the shared notion that the Musical was not based on or inspired by the book. *Id.* On December 5, 2019, the parties entered into a letter agreement memorializing this understanding. *Id.*, ¶¶ 47-48.

At the time the agreement was signed, Defendant sent an email to Plaintiffs in which she advised that, in the event the Musical was adapted into a film or other iteration in the future, she "would like to discuss some form of compensation for the rights." Compl., Ex. 3 at 1. In that email, Defendant acknowledged that "rights are

more limited for nonfiction than fiction," and noted the "artistry" that Plaintiffs brought to the Musical, but asserted that her "work helped to flesh out" the story. *Id.*

On November 16, 2024, Plaintiffs contacted Defendant to inform her that a producer expressed interest in bringing Plaintiffs' Musical to Broadway. Compl., ¶ 52. They requested that she sign an amended version of their December 5, 2019 letter to resolve any copyright issues. *Id.*, ¶ 53. Plaintiffs later shared a draft agreement with Defendant, offering $1.00 in consideration for the following terms: (1) Defendant "has no ownership or interest in the copyright and/or other intellectual property" ties to the Musical and will not bring forth any such claim regarding any element of the Musical, and (2) Plaintiffs are not required to have third parties who are licensing the Musical include the credit for Defendant's book. *Id.*, ¶¶ 55-56; ECF No. 1-8. Plaintiffs mentioned they would include an appreciation in the Musical's program or playbill when possible. Compl., ¶ 56.

On February 20, 2025, Defendant emailed Plaintiffs stating that she believed many of the elements ("scenes, characters, and themes") of the Musical were "quite precisely" tied to the facts in her book. *Id.*, ¶ 57; ECF No. 1-9 at 3. Defendant stated that she hoped both parties could agree to a "customary underlying rights arrangement" so she could "avoid challenging . . . production plans." Compl., ¶ 57; ECF No. 1-9 at 4.

On March 4, 2025, Plaintiffs replied, expressing their surprise and stating that they did not require a license for any rights from Defendant's book because

those facts were "not copyrightable." Compl., ¶ 59; ECF No. 1-9 at 1-2. Defendant disagreed and stated that if Plaintiffs continue with their production plans without her, she would "pursu[e] [her] rights" and contact all venues planning to host *The Hello Girls* Musical. Compl., ¶ 60; ECF No. 1-10 at 1. In subsequent communications through letters and between attorneys, Defendant maintained that she should be paid royalties, while Plaintiffs denied that they had infringed on Defendant's copyright. Compl., ¶ 61.

On April 15, 2025, Defendant's counsel stated in a letter that Defendant demands Plaintiffs provide credit to Defendant with the wording chosen by Defendant in all locations where Plaintiffs are credited, sell copies of Defendant's book where other merchandise is for sale at all performances of *The Hello Girls* Musical, and pay Defendant for exploitations and derivatives of the Musical. *Id*., ¶ 62. Plaintiffs allege that they expressed openness to discussion while maintaining their disagreement that Defendant was entitled to revenue from the production, but Defendant stated that if Plaintiffs move forward with commercial productions of the Musical, it would be viewed as "willful infringement" of Defendant's copyright interest and Defendant would take action. *Id*., ¶ 64; ECF No. 1-13 at 2.

Plaintiffs seek a declaratory judgment that the Musical "is not infringing, has not infringed, and is not liable for infringing any valid copyright owned by Defendant relating to The Hello Girls Book." Compl., ¶ 74.

## LEGAL STANDARDS

### A. Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendants. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). As such, a plaintiff must plead "legally sufficient allegations of jurisdiction," including "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *In re Magnetic Audiotape*, 334 F.3d 204, 206 (2d Cir. 2003) (cleaned up).

"Determining personal jurisdiction over a foreign defendant in a federal-question case such as this requires a two-step inquiry. First, [courts] look to the law of the forum state to determine whether personal jurisdiction will lie." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citation omitted). If the forum state's long-arm statute permits jurisdiction, courts "consider whether the . . . exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Id.* (citation omitted).

"The court construes any pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in plaintiff's favor." *Struna v. Leonardi*, 626

F. Supp. 3d 657, 665 (S.D.N.Y. 2022) (citation omitted). However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *Id.* "A court has 'considerable procedural leeway' on a Rule 12(b)(2) motion and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing." *Id.* at 666 (citation omitted).

**B. Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025). "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of" a cause of action's elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Cos.*, Inc., 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## DISCUSSION

Defendant moves to dismiss the Complaint for lack of personal jurisdiction, as she neither resides in New York nor has she purposefully availed herself of conducting business in New York. ECF No. 12-1. She also moves to dismiss the complaint for failure to state a claim, arguing that Plaintiff's claim is barred by the three-year statute of limitations for copyright claims under 17 U.S.C. § 507(b). ECF No. 12.

### A. Personal Jurisdiction

The Complaint does not specifically plead either general or specific jurisdiction over Defendant. *See* Compl., ¶¶ 15-19. Plaintiffs' opposition papers clarify that Plaintiffs rely on the N.Y. C.P.L.R.'s specific jurisdiction provision, Section 302(a). *See* ECF No. 26 ("Pl. Mem.") at 6-7. Defendant argues that this Court has neither specific nor general jurisdiction. *See* ECF No. 13 ("Def. Mem.") at 9-17. The Court concludes that Plaintiffs have alleged facts sufficient to establish specific jurisdiction over Defendant at the pleading stage. *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 681 (2d Cir. 2013).

### 1. Long-Arm Statute

New York's long-arm statute permits the exercise of personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999). Section 302 "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010). "Such activity may include the solicitation of business by defendants, contract negotiations between the parties, meetings at which defendants were present, or letters sent and phone calls made by defendants to plaintiffs." *Scholastic Inc. v. Stouffer*, No. 99-CV-11480 (AGS), 2000 WL 1154252, at *4 (S.D.N.Y. Aug. 14, 2000).

Defendant's communications with Plaintiffs regarding a potential agreement to pay her royalties, conducted through her attorney in or around April through August 2025, qualify as transacting business with the state. Compl., ¶¶ 62-64; ECF No. 12-2 ("Greenberger Decl."), ¶ 3. The long-arm statute allows jurisdiction over non-domiciliaries who transact business or contract with the state either "in person

or through an agent." N.Y. C.P.L.R. § 302(a). To qualify as an agent under Section 302, the agent must "act[] in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981). Here, one of Defendant's attorneys, Jordan Greenberger, communicated with Plaintiffs' attorneys from his office in New York during the parties' negotiations. *See* Greenberger Decl., ¶ 3. He also communicated with Plaintiffs directly, sending mail to their agent in New York. *See id.*; ECF No. 1-11. An attorney is considered an agent of their client. *Chevron Corp. v. Salazar*, 275 F.R.D. 422, 426 (S.D.N.Y. 2011).

Additionally, courts in this Circuit have found that even when negotiations do not result in a completed contract or agreement, they may still constitute a "transaction of business" under Section 302(a). This case closely mirrors the facts of *Scholastic, Inc. v. Stouffer*, in which the Court exercised jurisdiction over an out-of-state defendant whose agent had engaged in communications and meetings in New York regarding the parties' copyright and trademark disputes. 2000 WL 1154252 at *6. The Second Circuit has likewise affirmed a finding of personal jurisdiction in analogous circumstances, where unsuccessful contract negotiations proceeded through an agent in the state. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (finding attempts by defendant's New York agent to secure investment contracts to constitute "transacting business"). Consequently, the failed negotiations conducted through Defendant's New York attorney may serve as the basis for jurisdiction as a "transaction of business."

Defendant also engaged in other transactions with the state of New York. First, Plaintiffs allege that they ordered Defendant's book while they were conducting research for the Musical. Compl., ¶ 29. Plaintiffs also allege that they both reside in and are professionally based in New York City, which provides sufficient basis for a reasonable inference that a copy of Defendant's book was shipped to New York. *Id.*, ¶ 6, 11-12. Although the single book sale alleged in the Complaint was made to the Plaintiffs themselves, this fact does not impact the personal jurisdiction inquiry. *See, e.g., Chloe*, 616 F.3d at 162 (finding personal jurisdiction where an agent of the defendant shipped a counterfeit item to the plaintiff); *Mattel, Inc. v. Adventure Apparel*, No. 00-CV-4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (stating that the fact that a sale of a counterfeit product was made to plaintiff's investigator is "irrelevant"). Additionally, Defendant visited New York to see the Musical and discussed the history of the Hello Girls with the audience, and requested Plaintiffs include an acknowledgement of her book in the Musical's advertising to spread awareness of her work. Compl., ¶¶ 40, 47. Accordingly, the totality of circumstances regarding Defendant's interactions with New York provides sufficient basis to conclude Defendant transacted with the state.

The Court also finds that a substantial relationship exists between Defendant's transactions with New York and the claim asserted, such that the claim "aris[es] from" her activities in the state. N.Y. C.P.L.R. § 302(a). A complaint must allege an "articulable nexus or substantial relationship between the business

transaction and the claim asserted, but a causal relationship is not required." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 364 (S.D.N.Y. 2020) (cleaned up). Defendant's communications with Plaintiffs regarding a potential royalties agreement "asserted the very rights being contested here." *Scholastic Inc.*, 2000 WL 1154252 at *7. Whether Plaintiffs have infringed on Defendant's copyright forms the basis of Plaintiffs' declaratory judgment action. Compl., ¶¶ 61-64. Additionally, the 2019 agreement to credit Defendant's book in the Musical's programming also relates to the subject matter of this litigation. Compl., Ex. 4 at 1-2.

Defendant argues that "any argument that her minimal connections with New York satisfy [S]ection 302(a)(1) [is] foreclosed by the Second Circuit's decision" in *Beacon Enters. Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983). Def. Mem. at 12. In *Beacon*, the Second Circuit concluded that there was no basis for personal jurisdiction over an out-of-state defendant where the only asserted business transactions were a cease-and-desist letter sent by defendant to plaintiff, and an "unspecified number of mail order sales of [defendant's] products in New York." *Beacon*, 715 F.2d at 762-63. Even assuming these activities constituted "transacting business," the Second Circuit found that no substantial nexus with the claim asserted existed. *Id.* at 763-64.

The *Beacon* court applied an interpretation of the "arise from" prong in which "a direct relation between the cause of action and the in-state conduct" is required to constitute a substantial nexus. *Id.* at 764 (quoting *Fontanetta v. Am. Bd. of*

*Internal Med.*, 421 F.2d 355, 357 (2d Cir. 1970)). Yet this aspect of the holding in *Beacon* is no longer good law. In a subsequent case, the Second Circuit certified a question to the New York Court of Appeals to clarify "what sort of causal connection, if any, must be demonstrated between a defendant's New York activities and a plaintiff's 'claim' under the New York long-arm statute's nexus requirement." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 70 (2d Cir. 2012). In doing so, the Second Circuit observed that two competing standards for a substantial relationship had emerged: (1) a "stricter" standard in which causation was required, adopted by the *Beacon* Court, and (2) a more "permissive" standard in which a "discernible relationship" was sufficient. *Id.* at 70-71. The Court of Appeals clarified that to find a "substantial relationship" or "articulable nexus," "causation is not required, and that the inquiry under the statute is relatively permissive." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339-40 (2012). Specifically, "at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim" is all that is required. *Id.* The Second Circuit subsequently adopted this reasoning in finding personal jurisdiction over foreign defendants who used a New York bank account to support terrorism and other crimes, concluding that a sufficient nexus existed between the banking transactions and claims under the Anti-Terrorism Act. *Licci*, 732 F.3d at 168-69.

Accordingly, the *Beacon* standard for the "arise from" prong of the jurisdictional inquiry no longer governs. The Court of Appeals has clarified that

this interpretation was incorrect, and that the inquiry does not require strict causation. Under the *Licci* standard, only a "relatedness" between a defendant's contacts and the claims asserted is required. Here, this standard is met. Therefore, personal jurisdiction is proper under New York's long-arm statute.

**2. Due Process**

In analyzing whether jurisdiction comports with due process, courts evaluate (1) whether certain minimum contacts exist between defendant and the forum and (2) whether the exercise is reasonable. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015). As to the first requirement, courts analyze "the defendant's contacts with the forum state under [the] totality of the circumstances test." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Sufficient minimum contacts exist "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Eades*, 799 F.3d at 169 (quoting *Licci*, 732 F.3d at 170).

Here, the minimum contacts requirement is satisfied "for the same reasons that it satisfies New York's long-arm statute." *Chloe*, 616 F.3d at 171. Defendant's repeated engagement with parties in New York, through a New York agent, to receive compensation for the use of her work, as well as the shipment of the book to New York and her attendance at a performance and talk within New York, all qualify as conduct "purposefully directed toward the forum state." *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480

U.S. 102, 110 (1987). "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473.

In determining whether the exercise of jurisdiction is reasonable, courts consider whether exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement et al.*, 326 U.S. 310, 316 (1945) (cleaned up). Courts consider five factors:

> (1) the burden on the defendant, (2) the interests of the forum State, and (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Chloe*, 616 F.3d at 173 (quoting *Asahi*, 480 U.S. at 113). Defendants can challenge jurisdiction by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

The Court acknowledges the burden imposed on Defendant as a resident of California. Defendant, however, deliberately acquired an agent in New York and, through that agent, reached into the forum to negotiate an agreement with Plaintiffs for royalties. In doing so, she "availed [herself] of the privilege of conducting business" in New York. *Burger King*, 471 U.S. at 476. Consequently, "it is presumptively not unreasonable to require [her] to submit to the burdens of

litigation in [the] forum as well." *Id.* New York also has an interest in managing the dispute because the Musical was staged in New York by Plaintiffs' New York-based theater company. Compl., ¶¶ 6, 23. Defendant has not provided a compelling reason why California is the proper forum for this matter, besides the fact that she lives there and wrote her book there. Accordingly, the Court concludes that exercising jurisdiction over Defendant accords with due process.

**B. Statute of Limitations**

Under Section 507(b), a copyright claim must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "Determining when a claim accrues under the Copyright Act depends on the nature of the claim asserted." *Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 145 F.4th 257, 273 (2d Cir. 2025).

Courts, for example, have held that claims in which a plaintiff asserts ownership over a contested copyright interest, such as a co-author seeking ownership of a copyright interest in a book publication, accrue once, "when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Kwan v. Schlein*, 634 F.3d 224, 228 (2d. Cir. 2011) (cleaned up). Such a claim may accrue following an event such as "[a]n express assertion of sole authorship or ownership." *Id.* (cleaned up). In contrast, a claim based upon an infringement of a plaintiff's copyright can accrue multiple times, as each infringing act constitutes a separate violation of the statute. *See Atticus*, 145 F.4th at 273. Thus, an infringement claim "is timely if instituted within three years of each

infringing act for which relief is sought." *Merchant v. Levy*, 92 F.3d 51, 57 n.8 (2d Cir. 1996).

Defendant argues that "although somewhat of a round peg in a square hole, this case is at its core an ownership dispute in which Plaintiffs seek judicial confirmation that they are the sole owners of the Musical." Def. Mem. at 21. Under this theory, Defendant's claims accrued in November 2019, when Defendant first notified Plaintiffs that she wanted to discuss potentially receiving royalties if in the future the Musical achieved some level of success. Compl., Ex. 4 at 1-2.

The dispute in this case does not turn over the Defendant's ownership interest in the copyright for the Musical, however. It is uncontested that those rights lie with Plaintiffs. Rather, the Complaint seeks a declaratory judgment that Plaintiffs, in creating the Musical, have not infringed on Defendant's copyright. Compl., ¶¶ 70-74. The Complaint asserts that the only content from Defendant's book used in their Musical consisted of non-copyrightable historical facts. *Id.*, ¶¶ 58, 66, 72. The one-time accrual rule does not apply where, as here, a plaintiff seeks a declaratory judgment of non-infringement. *See Atticus*, 145 F.4th at 273-74.

The Court's conclusion is buttressed by the fact that it is unlikely that Plaintiffs could have brought a non-infringement declaratory judgment suit against Defendant in December 2019, as such a claim would not have been ripe for adjudication. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As used in the Declaratory Judgment Act, "the phrase 'case of actual controversy' . . . refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).

Whether the "case-or-controversy requirement" is satisfied depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief. *Id.* (citation omitted). Disputes must "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (cleaned up).

In the intellectual property context, a non-infringement declaratory judgment action cannot be sustained in federal court unless the dispute over the potential infringement has become sufficiently imminent and concrete. Courts have looked at such factors as whether the defendant created a reasonable apprehension of an infringement suit, demanded the right to royalty payments, or created a barrier to the regulatory approval of a product that is necessary for marketing. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008); *see also I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, No. 19-CV-2776 (AT), 2020 WL 2086096, at *2 (S.D.N.Y. Apr. 30, 2020) ("[N]o actual case or controversy exists unless the plaintiff

can show that the defendant *sought or threatened to seek* to prohibit plaintiff's use of its mark.").

The totality of circumstances as they existed in November and December 2019 did not present a sufficiently concrete or imminent controversy between the parties for Plaintiffs to have been able to maintain a non-infringement suit. Defendant's November 2019 communications centered on her desire for acknowledgement of her contributions, a dispute which appeared to be resolved through the December 2019 letter agreement between the parties. And the December 2019 email referenced only a desire to discuss a potential royalty agreement if various contingencies came to pass. *See* ECF Compl., Ex. 3. Defendant did not at that time demand royalties, accuse Plaintiffs of infringing her own copyright, send a cease-or-desist letter, or threaten legal action. Plaintiff's non-infringement claim thus did not accrue at that time.

**CONCLUSION**

The Motion to Dismiss is **DENIED**. The Clerk of Court is directed to terminate ECF No. 12.

SO ORDERED.

Dated: September 23, 2026
New York, New York

Jeannette Vargas

JEANNETTE A. VARGAS
United States District Judge